[No. 25266. Department One. February 11, 1935.]

ROBERT E. FIELD, *as Trustee, Respondent,* v. NORTHWESTERN FRUIT EXCHANGE, *Appellant,* FRUIT PRODUCTION COMPANY *et al., Respondents.*[1]

*D. A. Shiner* and *R. D. Kendall,* for appellant.
*A. N. Corbin,* for respondents.

[1]Reported in 40 P. (2d) 985.

MAIN, J.—This action is based upon a written contract. In the complaint, there are separately stated two causes of action. In the first, the plaintiff seeks recovery of the balance due upon the contract for the year 1931; in the second, recovery is sought for the amount specified to be paid for the year 1932. The defendant appeared by answer and cross-complaint, and brought in as additional parties the Fruit Production Company, G. A. Loudenback and Araminta L. Loudenback, his wife. In the cross-complaint, the defendant and cross-complainant sought affirmative relief against the additional defendants.

The cause came on for trial before the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to prevail upon each of its causes of action, and that the defendant and cross-complainant should take nothing by reason of its cross-complaint. Judgment was entered in favor of the plaintiff upon the first cause of action in the sum of $1,112.25, and upon the second $2,662.50, and the defendant's cross-complaint was dismissed, from all of which judgment the defendant appeals.

The facts in the case are somewhat complicated, and in the interests of clearness, some of the preliminary history, which is not material to the questions presented upon this appeal, will be omitted. The appellant, Northwestern Fruit Exchange, is a corporation with its principal place of business in the city of Wenatchee. The Fruit Production Company is a corporation with its principal place of business in the same city, G. A. Loudenback and wife being the principal stockholders and officers. Those parties will be referred to as the Fruit Production Company.

March 19, 1928, the Fruit Production Company, by real estate contract, sold to Lester D. Greer, Fred L. Greer and Arthur L. Greer, who will be referred to as

Greer Brothers, one hundred seventy-five acres, approximately, of orchard land in Grant county, for the purchase price of seventy thousand dollars, which was to be paid as detailed in the contract. At this time, the land was burdened by a large indebtedness, which was secured by what is called a mortgage trust deed, in which Robert B. Field was named as trustee.

On the same day that the real estate contract was entered into, Greer Brothers entered into a contract with the Northwestern Fruit Exchange in which it was provided that that corporation should be the "exclusive agent to sell and collect the proceeds from sales of all apples grown on the lands" covered by the contract of sale. This marketing contract provided that the apples should be marketed in accordance with and upon the terms and conditions therein specified. The contract was specifically made to cover the fruit crop of the years 1928, 1929, 1930, 1931 and 1932, and succeeding years, unless on or before March 1, 1933, it should be terminated as therein provided. August 19, 1931, the Fruit Production Company assigned its interest in the real estate contract to Robert B. Field, named in the trust deed and mortgage. After entering into the real estate contract, Greer Brothers entered into possession and operated the orchard.

March 24, 1931, what is designated as a supplement to the real estate contract was executed by all of the interested parties, with the exception of the Fruit Production Company. This contract provided that the fruit grown upon the land should be marketed through the Northwestern Fruit Exchange for a period of five years in accordance with the standard form of marketing contract, and provided in detail as to how the proceeds of the crop should be disposed of. The Fruit Production Company refused to sign the contract because Greer Brothers were in default

to it under the real estate contract in the sum of more than eleven thousand dollars, and it had given notice that the contract would be forfeited for this reason.

The mortgage creditor, to whom a large amount was due, the Fruit Production Company, and the Northwestern Fruit Exchange, which had financed the crop operations for Greer Brothers, were all interested in getting the matter adjusted so that the interests of each could be protected. Looking to this end, and on July 24, 1931, the Fruit Production Company and the Northwestern Fruit Exchange entered into a contract by which it was agreed that the Northwestern Fruit Exchange, upon the execution of the contract, would pay to the Fruit Production Company the sum of five thousand dollars and

"   . . .   commencing with the year 1931 and continuing thereafter for a period of five years, that each year in which the second party [Northwestern Fruit Exchange] handles the fruit crops grown upon the above mentioned premises [the land mentioned] and said fruit crops exceed 50,000 packed boxes of the three commercial grades, Extra Fancy, Fancy and C. Grade, that there shall be paid to the said first parties [Fruit Production Company] the sum of $2,000, such payment to be made on or before the 1st day of March of the year following the year in which such crop is produced; and that if any year commencing with the year 1931 the fruit crops produced upon said premises exceeds 55,000 packed boxes of the three commercial grades, Extra Fancy, Fancy and C. Grade, that then said Fruit Production Company shall receive $2500 for each such year,   . . . "

In consideration of the Northwestern Fruit Exchange signing this contract, the Fruit Production Company signed the contract dated March 24, 1931, which was supplemental to the real estate contract.

During the year 1931, there was produced by Greer Brothers, of the three grades of apples specified,

50,923 boxes, all of which were marketed through the Northwestern Fruit Exchange with the exception of 1,108 boxes of the C. Grade apples. In 1932, of the apples produced upon the ranch, the Fruit Exchange marketed more than 55,000 boxes. With reference to the first cause of action, that for the balance due for the year 1931, the appellant says that, inasmuch as it handled less than 50,000 boxes of apples, it was not required to make the two thousand dollar payment specified for that year in the agreement executed by it and the Fruit Production Company.

It will be observed that, in the excerpt from the contract above quoted, it appears that, each year in which the Northwestern Fruit Exchange "handles" more than 50,000 boxes of the fruit crops grown upon the lands mentioned, it will pay to the Fruit Production Company the sum of two thousand dollars. It also appears in the excerpt quoted that, if the fruit crops "produced" upon the lands exceed 55,000 packed boxes of the commercial grades of apples mentioned, then the Northwestern Fruit Exchange will pay to the Fruit Production Company $2,500 for each year.

The first question is whether the Northwestern Fruit Exchange, by failing to take the full 50,000 packed boxes of apples of the grades mentioned for the year 1931, could escape liability to the Fruit Production Company for that year. While the evidence is in conflict, we think it sustains the position that the Northwestern Fruit Exchange refused to handle the 1,108 boxes, and thereupon Greer Brothers marketed them through another agency. In the fall of 1932, and before the payment for the crop for that year became due, the Northwestern Fruit Exchange paid to the Fruit Production Company $1,050. Whether this was paid upon the amount for the year 1931 or 1932, the

evidence is in dispute, the decided weight of which is that the payment was made for the year 1931.

When the entire history of this case is considered and the relation of the various parties thereto, it seems that it was not the intention that the Northwestern Fruit Exchange could market a little less than 50,000 boxes of apples for the year 1931, refuse to take the balance of the apples which, if taken, would have exceeded the 50,000 boxes, and thereby escape payment of the two thousand dollars. Even though the word ''handles'' for that year is used, the parties must have intended to cover the crops produced, as they did with reference to the years when more than 55,000 boxes would be produced. In making the payment of $1,050 for the year 1931, the officers of the Northwestern Fruit Exchange apparently put this construction upon the contract. It must also be remembered that the Northwestern Fruit Exchange had an exclusive agency contract, which covered this year, by which that company was to market all the apples produced by Greer Brothers. The trial court properly entered a judgment in favor of Field as trustee upon the first cause of action.

With reference to the second cause of action, that for the year 1932, more than 55,000 packed boxes of the grades mentioned were marketed by the Northwestern Fruit Exchange, and under the terms of the contract it was under obligation to pay to the Fruit Production Company $2,500, no part of which had been paid. The Northwestern Fruit Exchange says that, of the crop of that year, eight carloads were marketed by the Fruit Production Company, and that the value of these carloads should be set off against the $2,500 specified in the contract.

Here, again, the evidence is in dispute as to whether the Northwestern Fruit Exchange had refused to

handle for the year 1932 the C. grade apples which were disposed of through the Fruit Production Company. It is our view that the reason that the Fruit Production Company handled those cars was that the Northwestern Fruit Exchange had refused to do so. In any event, the Fruit Production Company, in handling the eight cars, merely acted as the agent for Greer Brothers. The Northwestern Fruit Exchange, having handled more than 55,000 packed boxes for the year 1932, was under obligation to pay the Fruit Production Company, in accordance with the terms of the contract between the parties, $2,500. The trial court properly dismissed the Northwestern Fruit Exchange's cross-complaint and entered a judgment in accordance with the evidence and the terms of the contract.

The judgment will be affirmed.

MILLARD, C. J., BEALS, TOLMAN, and BLAKE, JJ., concur.