FILED
COURT OF APPEALS

2014 OCT 28 AM 10: 04

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43167-0-II |
| Respondent, | |
| v. | |
| CHARLES V. FARNSWORTH, JR., | PUBLISHED IN PART OPINION |
| Appellant. | |

MELNICK, J. — A jury found Charles Farnsworth guilty of first degree robbery, and the court sentenced him as a persistent offender to life without the possibility of parole. Farnsworth appeals, arguing that the evidence is insufficient to support his conviction.[1] Because there was insufficient evidence of a threat, we agree with Farnsworth that there is insufficient evidence to support his robbery conviction. We affirm in part, vacate Farnsworth's robbery conviction, and remand for the trial court to sentence Farnsworth on first degree theft.

## FACTS[2]

Charles Farnsworth and Donald McFarland ran out of heroin. To get money to buy more, they robbed a branch of the Harborstone Credit Union in Tacoma. McFarland, 69 years of age at the time, entered the branch wearing a wig and sunglasses. He approached a teller at the counter and handed her a note stating, "No die [sic] packs, no tracking devices, put the money in the bag." Clerk's Papers (CP) at 34. Although the teller became confused because McFarland did not actually have a bag, the teller handed him about $300 in cash from a drawer. McFarland said

---

[1] We address Farnsworth's remaining arguments in the unpublished portion of this opinion, including his pro se statement of additional grounds (SAG). *See* RAP 10.10.

[2] Facts relevant to the unpublished portion of this opinion are discussed in conjunction with the issues presented there.

"thank you" and left. 9 Report of Proceedings (RP) at 485. McFarland entered a truck driven by 59-year-old Farnsworth, and together they left the scene. A few blocks away, they were pulled over and arrested.

The State charged both Farnsworth and McFarland with first degree robbery. Farnsworth's case went to trial. McFarland pleaded guilty to first degree theft and agreed to testify in Farnsworth's trial.[3]

According to McFarland, he and Farnsworth had no money and had been evicted from the trailer they used as a "dope house." 13 RP at 1195. They were miserable from the effects of heroin withdrawal.

On the day of the instant crime, McFarland and Farnsworth spent six hours in the area near the credit union planning to steal from it. The initial plans called for McFarland to be the driver and Farnsworth to enter the credit union wearing a wig Farnsworth bought. But McFarland grew frustrated with Farnsworth's incessant "hem-hawing" and fidgeting with the wig. 13 RP at 1232. Finally, McFarland grabbed the wig and resolved to do the job himself. McFarland put the wig on his head and Farnsworth adjusted it for him.

Farnsworth then wrote a note and handed it to McFarland. McFarland did not know exactly what the note said, but he believed it contained instructions to the teller. McFarland explained that "whenever you're robbing a bank," tellers do exactly what they are told. 14 RP at 1254.

---

[3] McFarland's guilty plea included charges for both robbery and first degree theft. The parties stipulated in the plea that the State would move to vacate the robbery conviction after McFarland complied with his obligations to cooperate with the State. This information was not provided to the jury and McFarland testified he only pleaded to theft. In deciding the present case, we rely solely on the facts presented at Farnsworth's trial.

The trial court instructed the jury on both first degree robbery and the lesser included crime of first degree theft. At the conclusion of the trial, the jury found Farnsworth guilty of first degree robbery as an accomplice.

The sentencing court entered findings of fact and conclusions of law determining that Farnsworth was a persistent offender because he had previously committed two most serious offenses. Accordingly, the court sentenced Farnsworth to life in prison with no possibility of parole. The sentencing court also imposed legal financial obligations on the basis of a boilerplate finding that Farnsworth has an ability or likely future ability to pay.

Farnsworth appeals from his judgment and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Farnsworth argues that the evidence is insufficient to support his conviction as an accomplice to first degree robbery. We agree. Considering all of the facts presented to the jury, we conclude there is insufficient evidence of a direct, inherent, explicit, or implicit threat to uphold a conviction for robbery. There is also insufficient evidence that Farnsworth agreed to participate in any crime other than a theft from a financial institution. Accordingly, we hold that there is insufficient evidence to support Farnsworth's robbery conviction.

When a defendant challenges the sufficiency of the evidence supporting his conviction, we examine the record to decide whether any rational fact finder could have found that the State proved each element of the offense beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). In a sufficiency of the evidence challenge, the defendant admits the truth of all the

3

State's evidence; therefore, we consider the evidence and all reasonable inferences from it in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Further, direct evidence and circumstantial evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The term "robbery" is defined in RCW 9A.56.190.[4]

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will *by the use or threatened use of immediate force, violence, or fear of injury* to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

(Emphasis added).

A robbery conviction can be supported by evidence of any threat that induces an owner to part with his property. *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992). The criminal code defines a threat to include any direct *or indirect* communication of intent to cause bodily injury, to damage property, or to physically confine or restrain another person. RCW 9A.04.110(28)(a)-(c). Thus, when a rational fact finder could reasonably infer from the evidence that a defendant's note made an implied threat to a bank teller, the evidence is sufficient to establish the disputed element of robbery. *State v. Shcherenkov*, 146 Wn. App. 619, 628-29, 191 P.3d 99 (2008).

---

[4] The legislature amended RCW 9A.56.190 in 2011 to insert gender-neutral language. LAWS OF 2011, ch. 336, § 379. The amendment does not affect this analysis.

Here, when viewing the evidence in the light most favorable to the State, McFarland and Farnsworth intended to steal money from a financial institution.[5] The original plan involved Farnsworth putting on a disguise, entering the financial institution, and presenting the teller with a demand note. Farnsworth wrote the note, which said, "No die [sic] packs, no tracking devices, put the money in the bag." CP at 34. However, when it came time to execute the plan, McFarland became frustrated with Farnsworth. As a result, McFarland wore the disguise, entered the bank, and made the demand. The teller became frightened and handed money to McFarland. He then exited the bank and entered the vehicle driven by Farnsworth.

The present circumstances differ from *Shcherenkov*, 146 Wn. App. 619, and *State v. Collinsworth*, 90 Wn. App. 546, 966 P.2d 905 (1997). In *Shcherenkov*, this court found the evidence sufficient to support convictions following four bank robberies where no force or violence was used. 146 Wn. App. at 622. In three of the robberies, the robber passed each bank teller a note that stated in part, "This is a robbery." *Shcherenkov*, 146 Wn. App. at 622-23. In the fourth, the robber's note stated in its entirety, "Place $4,000 in an envelope. Do not make any sudden movements or actions. I will be watching you." *Shcherenkov*, 146 Wn. App. at 629. The robber also kept his hand in his pocket, causing the tellers to believe he had a gun. *Shcherenkov*, 146 Wn. App. at 622-23. This court held that a rational fact finder could reasonably infer that each of the four notes indirectly communicated a threat to use force if the teller failed to comply and the robber insinuated he had a weapon by keeping his hand in his pocket. *Shcherenkov*, 146 Wn. App. at 628-29.

---

[5] The fact McFarland said they were planning a "bank robbery" is irrelevant to our resolution of the case. It is a colloquialism similar to people saying their house was robbed when they really meant it was burglarized.

5

Likewise, in *Collinsworth*, the court found the evidence sufficient to support robbery convictions where a robber, in six separate incidents, verbally demanded cash from a bank teller, without displaying a weapon or articulating an overt threat. 90 Wn. App. at 553-54. In three of the robberies, the robber used a "direct," "demanding," or "serious" voice. *Collinsworth*, 90 Wn. App. at 548-50. In two of them, the robber told the teller he "was serious" after the teller failed to immediately comply. *Collinsworth*, 90 Wn. App. at 548, 550. And, two of the tellers believed the robber was armed although they did not actually see a weapon. *Collinsworth*, 90 Wn. App. at 549-50. In all six incidents, the teller testified either to feeling personally threatened or to fearing for the safety of others. *Collinsworth*, 90 Wn. App. at 548-51. And in four of the six incidents, the teller gave the robber money in accordance with a bank policy of compliance with such demands. *Collinsworth*, 90 Wn. App. at 548-50.

Here, there is insufficient evidence for a reasonable trier of fact to find the State proved beyond a reasonable doubt that Farnsworth planned to communicate to the teller an intent to use or threaten to use immediate force, violence, or fear of injury. McFarland simply handed over a note instructing the teller to "put the money in the bag." CP at 34. McFarland did not insinuate that he would take further action if the teller did not comply with the note's instructions. Unlike the tellers in *Shcherenkov* and *Collinsworth* who, based on the defendant's actions, believed the robbers may have been armed, there is no such testimony here. And, in fact, there is no evidence that McFarland made threats or used violence. After receiving the money, he said, "Thank you." 9 RP 485.

Contrary to the dissent's argument, the facts of this case do not show even a slight threat, either implicit or explicit. The dissent implies a threat based on the victim's reactions and not the

6

defendant's actions. Unquestionably and justifiably the victim was scared; however, there is nothing in the record, directly or circumstantially, to support a reasonable trier of fact finding beyond a reasonable doubt that McFarland made an implied threat to use force, violence, or fear of injury to any person.

Another major distinguishing factor in this case from the preceding two cases is that Farnsworth acted as an accomplice, not a principal.

A person may be liable for the acts of another if he or she is an accomplice. RCW 9A.08.020(1), (2)(c). A person is an accomplice of another person in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she aids or agrees to aid such other person in planning or committing it. RCW 9A.08.020(3).

"But, the accomplice liability statute has been construed to apply solely when the accomplice acts with knowledge of the specific crime that is eventually charged, rather than with knowledge of a different crime or generalized knowledge of criminal activity." *State v. Holcomb*, 180 Wn. App. 583, 590, 321 P.3d 1288, *review denied*, 180 Wn.2d 1029 (2014); *State v. Cronin*, 142 Wn.2d 568, 578–79, 14 P.3d 752 (2000); *State v. Roberts,* 142 Wn.2d 471, 512, 14 P.3d 713 (2000). "And the required aid or agreement to aid the other person must be 'in planning or committing [the crime].'" *Holcomb*, 180 Wn. App. at 590 (quoting RCW 9A.08.020(3)(a)(ii)).

To convict a person of robbery as an accomplice, the State must prove at trial, among other elements, that the accomplice knew that the principal intended the use or threatened use of immediate force, violence, or fear of injury in taking or retaining property.[6] RCW 9A.56.190.

There is no evidence that Farnsworth ever agreed to aid, abet, or encourage the commission of a crime that involved the use or threatened use of force, violence, or fear of injury. The dissent lists evidence showing that McFarland and Farnsworth planned to steal from the bank. Dissent at 5-6. But the evidence does not show that the plan involved force or the threatened use of force. We cannot say that when the plan merely calls for the principal to hand a "demand note" to a teller of a financial institution that a robbery occurs.

Farnsworth further argues that by implying a threat in this situation any theft from a financial institution would be a robbery. We agree that a robbery conviction under these facts

---

[6] Contrary to the dissent's characterization of our position, we agree that the State need not prove the defendant had specific knowledge of every element. However, as an accomplice, the State must prove beyond a reasonable doubt that Farnsworth aided or agreed to aid McFarland in committing a *specific* crime, namely, a robbery and not a theft. In addition,

> We adhere to the rule of [*State v. Davis*, 101 Wn.2d 654, 682 P.2d 883 (1984)] and [*State v. Rice*, 102 Wn.2d 120, 683 P.2d 199 (1984)]: an accomplice need not have knowledge of each element of the principal's crime in order to be convicted under RCW 9A.08.020. General knowledge of 'the crime' is sufficient. Nevertheless, knowledge by the accomplice that the principal intends to commit 'a crime' does not impose strict liability for any and all offenses that follow. Such an interpretation is contrary to the statute's plain language, its legislative history, and supporting case law.

*Roberts*, 142 Wn.2d at 513.

would blur the line between theft and robbery.[7] We hold there is insufficient evidence to support Farnsworth's robbery conviction.

Next, we consider the appropriate remedy. We may remand for sentencing on a lesser included offense where (1) the trial court instructed the jury on the lesser included offense and (2) the jury necessarily considered the elements of the offense in finding the defendant guilty of the greater offense. *State v. Green*, 94 Wn.2d 216, 234-35, 616 P.2d 628 (1980). Here, the trial court instructed the jury on the lesser included offense of first degree theft. The jury was instructed that one of the elements of first degree robbery is whether the defendant intended to commit theft of the property. Accordingly, in finding Farnsworth guilty of first degree robbery, the jury necessarily considered the elements of first degree theft. Therefore, we remand for sentencing on the lesser included offense of first degree theft.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL FACTS

McFarland explained his reasons for testifying. First, he did not like Farnsworth "because he was a freeloader" who never contributed to expenses. 13 RP at 1193. Second, a robbery conviction would have been McFarland's third strike, resulting in a life sentence. By testifying, McFarland hoped to convince the State to drop some of the charges against him. If McFarland's testimony complied with an agreement he made with the State, he would receive an 8- to 10-year

---

[7] If the legislature wants to define all thefts from financial institutions as robberies, it may act accordingly. It has not done so.

9

sentence. Third, McFarland was angry at Farnsworth for writing a statement for the police; because McFarland only learned of Farnsworth's statement through discovery, he believed Farnsworth was setting him up to take the fall alone. Fourth, Farnsworth acted rudely towards McFarland while they were both at Western State Hospital awaiting trial.

To cross-examine McFarland, Farnsworth sought to admit McFarland's statement on plea of guilty. The trial court excluded the statement under ER 403, ruling that it was confusing, misleading, and irrelevant. Farnsworth also attempted to offer evidence of McFarland's prior convictions for theft and possession of stolen property. The trial court rejected this evidence under ER 609.

The State called one of its police detectives, who is also a forensic handwriting expert, to testify about whether Farnsworth wrote the note given to the teller. The trial court ordered Farnsworth to provide a handwriting sample. The detective testified that Farnsworth refused to provide a handwriting sample or talk to the detective, except to complain that he had not received documents he had requested.

Throughout the trial, Farnsworth sat in a wooden chair while the attorneys sat in leather chairs with wheels. Farnsworth objected, and courtroom security personnel explained that they preferred to have defendants sit in wooden chairs, to prevent them from "get[ting] the jump and becom[ing] a security issue for all of us." RP (Oct. 12, 2011) at 9. The trial court denied Farnsworth's objection and explained that the chair was not conspicuous and did not signify guilt in the way that handcuffs or shackles do. The trial court offered to give Farnsworth's counsel a wooden chair, but counsel declined.

I.    CUMULATIVE ERROR

In his supplemental brief, Farnsworth argues that the cumulative effect of numerous errors deprived him of the right to a fair trial. We disagree.

The cumulative error doctrine warrants reversal of a defendant's conviction where the combined effect of several errors deprived the defendant of a fair trial, even though no error standing alone would warrant reversal. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000) (citing *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984)). When applying the cumulative error doctrine, we consider errors committed by the trial court as well as instances of misconduct by other participants, such as prosecutors or witnesses. *See Greiff*, 141 Wn.2d at 929 (collecting cases); *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010).

A.    *Claimed Trial Errors*

Farnsworth argues that he was deprived of a fair trial by the cumulative effect of six claimed errors: (1) the trial court refused to admit McFarland's plea agreement into evidence; (2) the trial court refused Farnsworth's request to introduce evidence of McFarland's prior convictions for crimes of dishonesty; (3) the prosecutor's opening statement contained a prejudicial assertion that was not supported by the testimony elicited at trial; (4) McFarland testified to Farnsworth's rude conduct toward him when they encountered each other at Western State Hospital before the trial; (5) the trial court violated Farnsworth's right to remain silent by admitting testimony of statements he made to a detective while refusing to give a handwriting sample; and (6) the trial court violated Farnsworth's presumption of innocence by requiring him to sit in a hard wooden chair in the courtroom. We hold that only one error occurred, when the trial court refused to admit evidence of McFarland's prior conviction for theft.

For the most part, Farnsworth claims that the trial court made erroneous evidentiary rulings. We review evidentiary rulings for an abuse of discretion. *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Darden*, 145 Wn.2d at 619. A trial court necessarily abuses its discretion when basing its ruling on an error of law. *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

1.    *Cross-Examination on McFarland's Plea Agreement*

Farnsworth first claims that the trial court erred by excluding McFarland's plea agreement and thus preventing Farnsworth from meaningfully cross-examining McFarland. We disagree.

A defendant's constitutional right to be confronted with the witnesses against him includes the opportunity to impeach the State's witnesses on cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Accordingly, a defendant is entitled to an opportunity "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis*, 415 U.S. at 318.

However, the scope of cross-examination is limited by general considerations of relevance. *Darden*, 145 Wn.2d at 621 (citing ER 401 and 403). To be admissible, evidence must be relevant: it must have any tendency to make the existence of any fact in consequence more probable or less probable. ER 401, 402. But relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. ER 403.

12

Farnsworth sought to admit McFarland's statement on plea of guilty, which contradicted McFarland's testimony of his own understanding of the terms of his plea agreement. On direct examination, McFarland testified that he was facing a robbery charge, which would have counted as a third strike resulting in a life sentence without possibility of release. McFarland understood that if he performed the terms of his plea agreement, his sentence would instead be only 8- to 10-years. However, McFarland's statement on plea of guilty included pleas to both robbery and theft.

Outside the presence of the jury, the State and McFarland's attorney concurred that McFarland's testimony correctly stated the end result of the plea agreement, but not its mechanics. In light of the explanation of the plea agreement, the trial court excluded McFarland's statement on plea of guilty agreement under ER 401 and 403, ruling that it was confusing, misleading, and irrelevant.

Contrary to Farnsworth's claim, the jury was fully informed that McFarland needed to perform his obligations by testifying against Farnsworth in order to receive an 8- to 10-year sentence. Thus, the jury was aware of facts from which it could infer that Farnsworth was biased and not credible. *See Davis*, 415 U.S. at 318. The trial court's exclusion of McFarland's statement on plea of guilty did not prevent Farnsworth from meaningfully cross-examining Farnsworth. Therefore, this claim of evidentiary error fails.

### 2. *Evidence of McFarland's Prior Crimes of Dishonesty*

Farnsworth next argues that the trial court erred by excluding evidence that McFarland had previously been convicted of two crimes of dishonesty: theft and possession of stolen property. We agree only as to McFarland's theft conviction.

Under ER 609, evidence that a witness previously committed a crime of dishonesty can be admissible for impeachment purposes. *State v. Jones*, 101 Wn.2d 113, 117, 677 P.3d 131 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988). In general, evidence of a prior conviction is admissible if (1) the crime was punishable by more than one year in prison *and* the court determines that its probative value outweighs the prejudice to the party against whom the evidence is offered or (2) the crime involved dishonesty or false statement. ER 609(a).

### a. *Theft Conviction*

Farnsworth offered evidence of McFarland's 2005 misdemeanor theft conviction, punishable by not more than one year. The trial court interpreted ER 609(a) to mean that prior-conviction evidence is admissible only if the conviction was punishable by more than one year; thus, it rejected the evidence even though theft was a crime of dishonesty. But the trial court's interpretation was clear error. Evidence of a prior crime of dishonesty is "automatically admissible" whether or not it was punishable by more than one year. *Jones*, 101 Wn.2d at 117.

### b. *Convictions for Possession of Stolen Property*

Farnsworth also offered evidence that McFarland had been convicted in 1987, 1988, and 1989 of felony possession of stolen property. The trial court refused this evidence because more than 10 years had elapsed since the end of McFarland's term of confinement for those crimes. The trial court did not err.

ER 609(a)'s general rule of admissibility is subject to a time limit. Under ER 609(b), evidence of a prior conviction is *not* admissible when 10 years have elapsed since the date of the conviction or the witness's release from confinement, whichever is later—"unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

Farnsworth argues that the 10-year time period should have been tolled from 1990 to 2003, the period when McFarland was confined for a number of offenses including possession of stolen property and kidnapping. We disagree.

When a witness had been convicted of multiple crimes, the 10-year time limit is judged separately for each offense. *State v. Russell*, 104 Wn. App. 422, 432, 16 P.3d 664 (2001). Farnsworth's trial counsel conceded that more than 10 years had elapsed between the time McFarland finished serving his time for the possession of stolen property offenses and the time of Farnsworth's trial. Therefore, McFarland's possession of stolen property convictions were outside ER 609(b)'s 10-year time limit. The trial court did not err by refusing to admit them.

Farnsworth further argues that the trial court erred by failing to determine whether the probative value of McFarland's convictions substantially outweighed their prejudicial effect. But ER 609(b) requires the trial court to make that determination only if it admits the evidence in the

interests of justice. Because the trial court excluded the evidence as outside the time limit, Farnsworth's argument fails.

### 3. *Prosecutor's Opening Statement*

Next, Farnsworth claims that the prosecutor improperly asserted during opening argument that the evidence would show Farnsworth had used a wig and sunglasses in two prior robberies he committed. Farnsworth claims the assertion was improper because (1) the trial court erred by ruling before the trial that such evidence would be admissible and (2) the State failed to elicit evidence supporting it. We disagree.

First, the pretrial ruling was not erroneous. Under ER 404(b), evidence of prior acts is not admissible to show that a person acted in conformity with his character. *State v. Everybodytalksabout*, 145 Wn.2d 456, 466, 39 P.3d 294 (2002). However, evidence of prior acts may be admissible for other purposes. ER 404(b); *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). ER 404(b) blocks the State from suggesting that the defendant is guilty because he is "a criminal-type person," but it does not deprive the State of relevant evidence necessary to establish an element of its case. *Foxhoven*, 161 Wn.2d at 175.

Before admitting evidence of a prior act, the trial court must (1) find by a preponderance of the evidence that the prior act occurred, (2) identify the purpose for which the evidence is offered, (3) determine whether the evidence is relevant to prove an element of the charged offense, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). Here the trial court (1) found by a preponderance of the evidence that Farnsworth committed two prior robberies while wearing a wig and sunglasses, (2) determined that the evidence was offered to show Farnsworth's knowledge of McFarland's

intentions when entering the credit union, (3) found that Farnsworth's knowledge was relevant to the issue of whether he was McFarland's accomplice, and (4) determined that, because Farnsworth denied knowing that McFarland was going to rob the credit union, the evidence was highly probative of Farnsworth's knowledge, to a degree that outweighed the prejudicial effect of suggesting that Farnsworth "is a bad guy." 4 RP at 160. Thus, the trial court allowed the State to offer evidence of Farnsworth's two prior robberies.

In challenging this ruling, Farnsworth argues that the probative value was minimal and the prejudicial effect was great. But Farnsworth does not explain how the trial court's ruling was an abuse of its discretion. *Darden*, 145 Wn.2d at 619. Therefore, the ruling was not error.

Second, the prosecutor did not improperly mention the two prior robberies during the State's opening. A prosecutor's opening statement may anticipate what the evidence will show, so long as the prosecutor has a good faith belief that such evidence will be produced at trial. *State v. Campbell*, 103 Wn.2d 1, 15-16, 691 P.2d 929 (1984). The defendant bears the burden of showing that the prosecutor acted in bad faith. *Campbell*, 103 Wn.2d at 16. Because Farnsworth never claimed that the prosecutor acted in bad faith, this argument fails.

4.      *Farnsworth's Rude Conduct*

Farnsworth next argues that the trial court violated ER 404(b) by allowing McFarland to testify about Farnsworth's rude conduct towards him while they both were held at Western State Hospital awaiting trial. During the encounter, Farnsworth "flipped [McFarland] the bird"; removed his own pants and "grabbed his private parts"; said, "'Suck on these you son of a bitch'"; and called McFarland a "stool pigeon." 15 RP at 1430. We reject Farnsworth's argument.

Here, the trial court did not violate ER 404(b) because it did not admit evidence of Farnsworth's rude conduct to show that Farnsworth acted in conformity with his character. *Foxhoven*, 161 Wn.2d at 175. Instead, the trial court admitted this evidence because it was probative of McFarland's motives for testifying against Farnsworth. Farnsworth claims that the State "overstated" the probative value of the evidence for this purpose, but he fails to explain how the trial court's ruling was an abuse of discretion. This argument fails.

5.      *Farnsworth's Right to Remain Silent*

Farnsworth further claims that his constitutional right to remain silent was violated by the admission of statements he made to a detective while refusing to comply with a court order to provide a handwriting exemplar. We disagree.

Farnsworth concedes that evidence of a defendant's refusal to comply with a court order to obtain information may be admissible. *Schmerber v. California*, 384 U.S. 757, 763-64, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). But he argues that the detective improperly testified to Farnsworth's statements that went beyond the mere act of refusal. According to Farnsworth, these additional statements were prejudicial because they portrayed Farnsworth as "uncooperative and troublesome." Supp. Br. of Appellant at 27.

But as the State asserts, Farnsworth did not object below to the detective's testimony on this ground. Therefore, Farnsworth cannot predicate a claim of error on this ground. ER 103(a). Moreover, Farnsworth fails to explain how his right to remain silent was violated. This argument fails.

18

6.   *Presumption of Innocence*

Lastly, Farnsworth claims that the trial court destroyed the presumption of innocence because during the trial Farnsworth sat in "a hard wooden chair," while the attorneys sat in "padded black leather chairs with wheels." Supp. Br. of Appellant at 28. We disagree.

A court violates the presumption of innocence if a criminal defendant lacks "the appearance, dignity, and self-respect of a free and innocent man." *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999). In the jury's presence, it may be improper to "single out a defendant as a particularly dangerous or guilty person." *Finch*, 137 Wn.2d at 845. Because a wooden chair does not identify a dangerous or guilty person, this argument fails.

B.   *The Cumulative Error Doctrine Does Not Warrant Reversal Here*

Cumulative error warrants reversal of a conviction when the defendant was denied a fair trial. *Greiff*, 141 Wn.2d at 929. A defendant was denied a fair trial if, considering the trial's full scope, the combined effect of the errors materially affected the trial's outcome. *See State v. Russell*, 125 Wn.2d 24, 94, 882 P.2d 747 (1994). Thus a defendant is more likely to be prejudiced by the effect of cumulative errors where the case against the defendant is weak. *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). But the cumulative error doctrine does not warrant reversal when a trial has few errors with little or no impact on the outcome. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

As explained above, the trial here included only one error: the exclusion of evidence that McFarland had been convicted of misdemeanor theft under ER 609(a). Farnsworth does not argue that this error, standing alone, deprived him of a fair trial or materially affected the trial's outcome. Thus, his cumulative error argument fails.

Moreover, the lone error was harmless. On direct examination, McFarland admitted that he engaged in "hustling" to support his heroin addiction. 13 RP at 1204-05. McFarland elaborated that he did "[w]hat they call 'boosting,' shoplifting, busting meat, stuff like this. And stole things; sold them. Different things, you know. It was anything that you could do to where we could come up with enough money to get a [heroin] fix to get well." 13 RP at 1205. McFarland further testified that he had previously been convicted of first degree burglary and first degree robbery. Given McFarland's admitted stealing and convictions, evidence of his theft conviction would have been merely cumulative on the issue of McFarland's character for truthfulness.

## II. COMPARABILITY OF FOREIGN CONVICTION TO A MOST SERIOUS OFFENSE

Farnsworth next challenges his sentence as a persistent offender. Because we vacate his first degree robbery conviction and first degree theft is not a most serious offense under the persistent offender act, Farnsworth is no longer subject to sentencing as a persistent offender. RCW 9.94A.030(32); RCW 9A.56.030(2). Therefore, we do not reach this issue.

## III. LEGAL FINANCIAL OBLIGATIONS

In his pro se statement of additional grounds, Farnsworth relies on *State v. Bertrand*, 165 Wn. App. 393, 267 P.3d 511, *review denied*, 175 Wn.2d 1014 (2012), to argue the record fails to support the trial court's boilerplate finding of his ability to pay his legal financial obligations. Because he did not object in the trial court, Farnsworth failed to preserve this argument for review.[8]

---

[8] In addition, Farnsworth claims that the trial court's boilerplate finding "violates his equal protection rights because he is disabled and unable to pay." SAG at 13. But Farnsworth cites no authority to support his equal protection claim. Therefore we do not consider it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 828 P.2d 549 (1992).

We recently decided that, under RAP 2.5(a), a defendant is not entitled to challenge for the first time on appeal the imposition of legal financial obligations on the basis of a boilerplate finding. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013). We follow our decision in *Blazina* and decline to consider Farnsworth's argument.

We affirm in part, vacate Farnsworth's robbery conviction, and remand for the trial court to sentence Farnsworth on first degree theft.

Melnick, J.

I concur:

Johanson, C.J.

WORSWICK, J. (dissenting in part) — The majority holds that, as a matter of law, a person does not commit a robbery when he obtains money by entering a bank wearing a disguise and handing a bank teller a note demanding the unconditional surrender of money to which he has no conceivable claim. I respectfully disagree.

I would hold that sufficient evidence supports Charles Farnsworth's robbery conviction. Because I would affirm this conviction, I would also reach Farnsworth's challenge to his sentence as a persistent offender. But I agree with the majority as to all other issues decided in the unpublished portion of its opinion.

The majority states the correct rules governing our review of Farnsworth's sufficiency of the evidence claim. We must decide whether any rational trier of fact could have found that the State proved each element of robbery beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). By making this claim, Farnsworth has admitted the truth of all the State's evidence, and we must draw all reasonable inferences in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

However, the majority misapplies these rules in deciding that there was insufficient proof of (1) a threat communicated by Donald McFarland and (2) Farnsworth's complicity, which requires his knowledge that his actions would promote or facilitate McFarland's robbery. In my opinion, a rational trier of fact could conclude beyond a reasonable doubt that the State proved both issues.

A.    *Threat*

Before examining the evidence of McFarland's threat, it is necessary to address the majority's concern that the elements of robbery could be interpreted too broadly. The majority asserts that "a robbery conviction under these facts would blur the line between theft and robbery." Majority at 8-9.

A recitation of the elements of theft and robbery shows that this concern is unfounded. A defendant commits theft when he wrongfully takes property from another person with intent to deprive the person of the property. RCW 9A.56.020(1)(a). In contrast, a defendant commits robbery when he unlawfully takes property from another person against the person's will "*by the use or threatened use of immediate force, violence, or fear of injury.*" Former RCW 9A.56.190 (1975) (emphasis added).

Thus when any threat—"no matter how slight"—induces a person to part with his property, a robbery has occurred. *State v. Handburgh*, 119 Wn.2d 284, 293, 830 P.2d 641 (1992). Former RCW 9A.04.110(27)(a) (2007) defines a threat to include any direct or indirect communication of intent to cause bodily injury to the person threatened or to any other person. As the majority recognizes, a threat may be implied or explicit. *State v. Shcherenkov*, 146 Wn. App. 619, 628-29, 191 P.3d 99 (2008).

Because McFarland did not make an explicit threat, the issue here is whether McFarland obtained money from the teller by making an *implied* threat to use force, violence, or fear of injury. I agree with the majority that the evidence is sufficient to establish this element of robbery when (1) it shows a defendant gave a note to a bank teller and (2) a rational trier of fact could reasonably infer that the note implied a threat. *Shcherenkov*, 146 Wn. App. at 628-29.

I disagree, however, with the majority's conclusion that it is unreasonable for *any rational trier of fact* to infer a threat here. McFarland gave the teller a note stating, "No die packs, no tracking devices, put the money in the bag." Clerk's Papers at 34. This is a naked demand for money, unsupported by any claim of right. I agree with Division One of this court that it is reasonable for a rational trier of fact to infer that such a demand is "fraught with the implicit threat to use force." *State v. Collinsworth*, 90 Wn. App. 546, 553, 966 P.2d 905 (1997) (per curiam). Indeed, without the implicit threat to use force, it is difficult to imagine why the teller would comply with the note's demand for money.

Nonetheless, Farnsworth asserts that the teller gave McFarland money simply because it was the credit union's policy to comply with any note's demand—not because McFarland made a threat. But the teller's testimony contradicts this assertion. The teller complied because she "didn't want anybody else to get harmed, and [she] didn't know what he was capable of doing." 9 Report of Proceedings (RP) at 486. Moreover, because the policy allowed a robber to "get out as quick as possible so nobody else can get harmed," the policy itself recognized that a naked demand for the bank's money conveys a threat of violence. 9 RP at 486.

Further, under the circumstances in which McFarland delivered the note, it is all the more reasonable to infer that McFarland communicated a threat. As soon as McFarland entered the credit union, the teller became suspicious because he was wearing a wig and dark sunglasses while "looking around acting all fidgety." 9 RP at 477. When McFarland approached the teller at her counter, he kept his arms crossed and leaned over the counter "[p]ast [her] comfort zone." 9 RP at 480. Viewed in the light most favorable to the State, testimony that a man in disguise made the

teller physically uncomfortable bolsters the reasonable inference that the man communicated an implied threat of violence.[9]

In addition, the majority's analysis is flawed in one important respect when it distinguishes this case from *Shcherenkov*, 146 Wn. App. 619, and *Collinsworth*, 90 Wn. App. 546. The majority considers only the direct evidence, without drawing any inferences from it. But we are required to draw all reasonable inferences in the State's favor and to consider direct and circumstantial evidence equally reliable. *Salinas*, 119 Wn.2d at 201; *Delmarter*, 94 Wn.2d at 638.

Lastly, I note that the majority's analysis of the evidence in this case omits substantive analysis regarding the conclusions that a rational trier of fact could form. This omission matters because the sufficiency of the evidence inquiry is limited to protecting the constitutional standard of proof beyond a reasonable doubt. *Green*, 94 Wn.2d at 221. Thus we are not to weigh the evidence to decide what *we* believe it proved; instead we must decide whether "'*any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*.'" *Green*, 94 Wn.2d at 221-22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). Because I would hold that a rational trier of fact could find beyond a reasonable doubt that McFarland communicated an implied threat, I would affirm Farnsworth's robbery conviction.

---

[9] The majority acknowledges that the teller was "justifiably" scared. Majority at 7.

B.     *Complicity*

The majority further decides that the evidence is insufficient to show that Farnsworth was an accomplice to McFarland's robbery.  As an initial matter, I note that neither party raised or briefed this issue.  In addition, I disagree with the majority's analysis.

A defendant is liable as an accomplice for another person's crime if the defendant (1) "[a]ids or agrees to aid such other person in planning or committing it" and (2) has "knowledge that it will promote or facilitate the commission of the crime."  RCW 9A.08.020(3)(a)(ii).  Complicity requires merely general knowledge of the principal's crime, not actual knowledge of each specific element.  *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000).[10]  But the majority ignores this rule in concluding that the evidence is insufficient to show that Farnsworth knew McFarland would use or threaten to use force, violence, or fear of injury.

I disagree with the majority's assertion that "[t]he fact McFarland said they were planning a 'bank robbery' is irrelevant to our resolution of the case."  Majority at 5 n.5.  We are required to examine the evidence in the record when we consider the sufficiency of the evidence.  *Green*, 94 Wn.2d at 221.  And McFarland's testimony about the plans he made with Farnsworth is clearly relevant to Farnsworth's general knowledge of McFarland's crime.  *See Roberts*, 142 Wn.2d at 513.

---

[10] The majority reads *Roberts* as standing for an entirely different proposition: that the State must show the accomplice's knowledge of each element of the principal's crime.  But *Roberts* expressly rejected this proposition; instead, it adhered to the rules of *State v. Davis*, 101 Wn.2d 654, 682 P.2d 883 (1984), and *State v. Rice*, 102 Wn.2d 120, 683 P.2d 199 (1984).  *Roberts*, 142 Wn.2d at 511-13.

The evidence here is more than sufficient to prove Farnsworth's complicity. McFarland testified that he had been struggling for months to pay for heroin and living expenses, while Farnsworth consumed heroin without paying for it. According to McFarland, Farnsworth explained his inability to pay by repeatedly saying, "Well, if I had a gun, I'd do a robbery, I'd do a robbery, I'd do a robbery." 13 RP at 1201. Although McFarland believed Farnsworth was merely boasting, Farnsworth bought a wig and remarked, "[A]ll I need is a gun." 13 RP at 1237.

Eventually McFarland became so desperate that he began listening to Farnsworth and agreed to help him "do the robbery." 13 RP at 1207. Together, Farnsworth and McFarland cased two banks before choosing the one to rob.

The initial plan called for McFarland to drive and for Farnsworth to commit the robbery "[b]ecause it was his deal. He was the one always talking about the robbery." 13 RP at 1207. But on the day of the robbery, McFarland's brother forbade him from driving because he was too drunk; Farnsworth drove instead.

At one point, McFarland and Farnsworth planned to use a bicycle to flee the bank. Farnsworth tested the bicycle by riding it out of McFarland's sight, and when Farnsworth returned the bike was broken. Although McFarland understood that Farnsworth would rob the bank, Farnsworth repeatedly backed out by making excuses for not going into the bank. Because Farnsworth was "an expert at using people," McFarland suspected that Farnsworth may have intentionally broken the bicycle and backed out so that McFarland would become frustrated and perform the robbery himself. 13 RP at 1230.

Fed up with Farnsworth's "hem and hawing," McFarland grabbed the wig, put it on, and decided to rob the bank himself. 13 RP at 1233. Farnsworth helped by adjusting the wig on McFarland's head before McFarland entered the bank to rob it.

Viewed in the light most favorable to the State, this evidence shows that (1) Farnsworth aided McFarland in planning and committing the bank robbery and (2) Farnsworth had general knowledge that his actions would promote or facilitate this crime. *See* RCW 9A.08.020(3)(a)(ii); *Roberts*, 142 Wn.2d at 513. Therefore the evidence is sufficient to prove Farnsworth's complicity.

Even if the State were required to prove that Farnsworth had *specific* knowledge of *each element* of McFarland's robbery, as the majority suggests, I would find the evidence here sufficient. Farnsworth wrote the note that McFarland ultimately handed to the teller. As explained above, I would hold that a rational trier of fact could reasonably infer that the note communicated an implied threat. I would also hold that a rational trier of fact could conclude beyond a reasonable doubt that Farnsworth knew that writing the note would promote or facilitate the implied threat that McFarland communicated by delivering the note to the teller.

I would affirm Farnsworth's robbery conviction and reach the sentencing issues.



Worswick, J.