191 P.3d 99 (2008)
STATE of Washington, Respondent,
v.
Vladimir SHCHERENKOV, Appellant.
Nos. 35825-5-II, 35828-5-II.
Court of Appeals of Washington, Division 2.
September 3, 2008.
Stephanie C. Cunningham, Attorney at Law, Seattle, WA, for Appellant.
*100 Kathleen Proctor, Pierce County Prosecuting Atty. Office, Melody M. Crick, Pierce County Prosecuting Attorney, Tacoma, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Vladimir Shcherenkov appeals his convictions on four counts of first degree robbery of a financial institution, arguing that (1) the trial court erroneously instructed the jury that the "threatened use of immediate force" could be implied, (2) the State's evidence was insufficient to support a conviction, and (3) his trial counsel was ineffective in failing to request an instruction on first degree theft as a lesser included offense. Finding no error, we affirm.

FACTS
¶ 2 This case involves four bank robberies.
¶ 3 In the first incident, Shcherenkov entered a Tacoma branch of Wells Fargo Bank and approached bank teller Linda Masten. He said nothing but held up a note with both hands for her to read. The note read, "Please be calm. This is a robbery." Report of Proceedings (RP) at 353. Masten took a handful of bills out of her till and handed them to Shcherenkov. She testified that she had been trained to comply with demands like this, but she would have done so on her own "[f]or the safety of [her]self and others." RP at 357. She interpreted the word "robbery" to convey an intent to harm, and she knew from her training that robberies can sometimes escalate and "[y]ou don't know the type of person that you are dealing with." RP at 358. Shcherenkov himself was calm and did not "do anything physical" except to show her the note. RP at 354. He also reached into his pocket at one point for what might have been a cell phone or radio, and Masten worried that he was signaling someone else and that the robbery was going to escalate.
¶ 4 In the second incident, Shcherenkov entered a Lakewood branch of Columbia Bank and approached teller Crystal Jackson. He took a piece of paper out of his left pocket, unfolded it with one hand, and put it on the counter; he kept his right hand in his pocket. The note read, "Stay calm. This is a robbery. Put $3,000 in envelopes." RP at 460. Jackson testified that by keeping his hand in his pocket, Shcherenkov implied that he had a gun. She felt threatened because of the content of the note and because "he did not look like he wanted to be messed around with, like it was not a joke." RP at 464. Jackson gave him the money, and he left.
¶ 5 In the third incident, Shcherenkov entered a Tacoma branch of Key Bank "[o]verly covered up," with a hood over his head and his hands in his pockets. RP at 580. When the bank teller, Deborah Chase, called him to her window, he presented a note with both hands. The note read, "This is a robbery. Put $3,000 in an envelope." RP at 584. Chase complied with the note because she "d[id]n't want to create an incident with somebody else getting hurt." RP at 586. The note and "the fact that [she] was being robbed ... made [her] feel threatened." RP at 597.
¶ 6 In the fourth incident, Shcherenkov entered a Puyallup branch of Rainier Pacific Bank and approached bank teller Tanya James. As he approached, he kept his hands in his pockets. He smiled and set a note on the counter that stated in heavy capital letters, "Place $4,000 in an envelope. Do not make any sudden movements or actions. I will be watching you." RP at 669. His other hand remained in his pocket. James interpreted the "I will be watching you" part of the note to mean that he possibly had a weapon he might use. James "just did what [they] were trained to do and [gave] him what he asked for so that' there were no injuries to anybody." RP at 670.
¶ 7 Police arrested Shcherenkov three days after the fourth incident, and Shcherenkov confessed to the crimes. The State charged him with four counts of first degree robbery against a financial institution under RCW 9A.56.200(1)(b).[1]
*101 ¶ 8 At the end of trial, the trial court gave the jury the following instruction, after argument by the parties regarding the applicability of State v. Collinsworth, 90 Wash.App. 546, 966 P.2d 905 (1997):
A person commits the crime of robbery when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another against that person's will by the use, or explicit or implied threatened use, of immediate force, violence, or fear of injury to that person or to that person's property or to the person or property of anyone.
Clerk's Papers (CP) at 144, 275 (emphasis added). Defense counsel did not request a lesser included offense instruction on first degree theft.
¶ 9 The jury found Shcherenkov guilty of all four counts of first degree robbery.

ANALYSIS

I. Jury Instruction
¶ 10 Shcherenkov argues that the trial court's instruction relieved the State of its burden to prove the element of "force or the threatened use of force" because it allowed the jury to convict if it found merely an "implied" threat of force. Br. of Appellant at 7-8. Jury instructions are proper if they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. State v. Willis, 153 Wash.2d 366, 370, 103 P.3d 1213 (2005).
¶ 11 RCW 9A.56.190 provides that "[a] person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." (Emphasis added.) In this case, the trial court's instruction recited this statutory definition verbatim except that it added the phrase "explicit or implied" to modify the word "threatened." CP at 144. The question therefore is whether a "threat" of immediate force may be implied. We hold that it may.
¶ 12 Robbery encompasses any "taking of ... property [that is] attended with such circumstances of terror, or such threatening by menace, word or gesture as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person." State v. Redmond, 122 Wash. 392, 393, 210 P. 772 (1922) (emphasis added); see also 67 Am.Jur.2d Robbery § 89, at 114 (2003) ("The determination of whether intimidation was used is based on an objective test of whether an ordinary person in the bank employee's position could reasonably infer a threat of bodily harm from the defendant's acts."). In addition, although neither party has raised it, we note the statutory definition of "threat" in RCW 9A.04.110(27),[2] which applies to robbery offenses. RCW 9A.04.110 (applying definitions to entire title 9A RCW "unless a different meaning plainly is required"); see also State v. Gallaher, 24 Wash.App. 819, 821 & n. 1, 604 P.2d 185 (1979). Under that provision, to "`[t]hreat[en]' means to communicate, directly or indirectly the intent" to take the applicable action. RCW 9A.04.110(27) (emphasis added). In the robbery context, therefore, the "threatened use of immediate force, violence, or fear of injury" means a direct or indirect communication of the intent to use immediate force, violence, or cause injury. See Gallaher, 24 Wash.App. at 821-22, 604 P.2d 185 (holding that jury instruction using RCW 9A.04.110 definition of "threat" in robbery context must include requirement that the force be "immediate").
¶ 13 Definitions of both "indirect" and "implied" include the notion of communicating something in a way that is suggestive rather than explicit.[3] Thus, the trial court's "implied *102 threat" instruction easily fits within the statutorily authorized indirect communication.
¶ 14 The classic example of a legitimate implied threat is brandishing a weapon. See, e.g., State v. Demery, 144 Wash.2d 753, 755, 30 P.3d 1278 (2001); Redmond, 122 Wash, at 393, 210 P. 772. Such a threat is not "explicit" unless the brandisher declares his intent to use the weapon if the victim does not facilitate his taking of the property. This example illustrates that any legal distinction between explicit and implied threats would be unworkable and inconsistent with longstanding precedent. Shcherenkov argues that brandishing a weapon is different from the threats in this case because it is "overt," but this argument goes to degree of explicitness rather than to a distinction between "explicit" and "implied." See Br. of Appellant at 10. In sum, the trial court correctly instructed the jury that a threat of immediate force may be explicit or implied.
¶ 15 The trial court (and both parties) relied on Division One's decision in Collinsworth, 90 Wash.App. 546, 966 P.2d 905, as the basis for the court's instruction. Shcherenkov is particularly distressed with Division One's language that "[n]o matter how calmly expressed, an unequivocal demand for the immediate surrender of the bank's money, unsupported by even the pretext of any lawful entitlement to the funds, is fraught with the implicit threat to use force." Collinsworth, 90 Wash.App. at 553, 966 P.2d 905. But Collinsworth is not on point. The issue there was sufficiency of the evidence, not whether an implied threat could support a robbery conviction. Collinsworth, 90 Wash. App. at 551, 966 P.2d 905. And we need not decide whether we fully agree with the above-quoted language. To the extent that Collinsworth affirms the standard that an implied threat is sufficient to support a robbery conviction, we are completely in accord.

II. Sufficiency of the Evidence
¶ 16 Shcherenkov argues that the State failed to present sufficient evidence to establish that he used or threatened immediate force or violence because it did not prove an "overt act of force or overt threat of force." Br. of Appellant at 22.
¶ 17 We review a defendant's challenge to the sufficiency of the evidence by asking whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Finch, 137 Wash.2d 792, 831, 975 P.2d 967 (1999). In answering this question, we view the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. State v. Gregory, 158 Wash.2d 759, 817, 147 P.3d 1201 (2006). We consider circumstantial and direct evidence equally reliable. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004).
¶ 18 "Any ... threat, no matter how slight, which induces an owner to part with his property is sufficient to sustain a robbery conviction." State v. Handburgh, 119 Wash.2d 284, 293, 830 P.2d 641 (1992). And, as discussed above, the threat need not be explicit if the defendant indirectly communicates his intent. See RCW 9A.04.110(27).
¶ 19 Shcherenkov again focuses on Collinsworth 90 Wash.App. 546, 966 P.2d 905. In Collinsworth, the defendant went to several banks, approached tellers, and said, "Give me your hundreds, fifties and twenties," or "I need your hundreds, fifties and twenties." Collinsworth, 90 Wash.App. at 548-49, 966 P.2d 905. He used a "serious" or "direct and demanding" voice to demand the money, but he did not display a weapon or make any explicit threats or threatening gestures. Collinsworth, 90 Wash.App. at 548-49, 966 P.2d 905. The defendant argued that the State's evidence was insufficient to support a robbery conviction because he did not threaten anyone; rather, he merely "`exploited]' a weakness in the banks' operating procedure [that] required tellers to comply with any demands for money." Collinsworth, 90 Wash.App. at 551, 966 P.2d 905. The trial court rejected this argument with the "implicit threat" language quoted above. Collinsworth, 90 Wash.App. at 553, 966 P.2d 905.
¶ 20 Shcherenkov argues that under Collinsworth, "theft becomes a robbery not because of anything that the defendant does or says, but because both the courts and bank *103 personnel seem to believe that any demand for money is fraught with extreme danger." Br. of Appellant at 21. According to Shcherenkov, Collinsworth "removes the State's burden to establish that the defendant actually used or threatened to use force[,] ... turns any demand for money within a bank into robbery simply because of the nature of the bank environment, and has essentially imposed strict liability for any face-to-face theft from a bank." Br. of Appellant at 11.
¶ 21 But as we have discussed above, we need not adopt or endorse the Collinsworth language that so disturbs Shcherenkov. We have held that the trial court's implied threat instruction was a proper statement of the law. And the State acknowledges it must still persuade the jury in every case that the defendant communicated, directly or indirectly, the intent to use immediate force beyond a reasonable doubt. RCW 9A.56.190; RCW 9A04.110(27).
¶ 22 The communication requirement distinguishes this case from United States v. Wagstaff, 865 F.2d 626 (4th Cir.1989), which Shcherenkov cites to support his concern that Collinsworth "blurs the line between theft and robbery." Br. of Appellant at 11. In Wagstaff, the defendant did not communicate anything; rather, he entered a bank, walked into the tellers' area, and started removing money from a cash drawer. Wagstaff, 865 F.2d at 627; see Collinsworth, 90 Wash.App. at 554, 966 P.2d 905. The issue in that case was whether a teller's subjective fear upon witnessing the defendant's action was sufficient, standing alone, to establish a taking "by intimidation." Wagstaff, 865 F.2d at 629 (interpreting 18 U.S.C. § 2113(a)). By contrast, Shcherenkov directly demanded of each teller that she give him money, and the issue is whether those demands used a threat of immediate force as an inducement to comply. See Collinsworth, 90 Wash.App. at 554, 966 P.2d 905.
¶ 23 The jury found that Shcherenkov's conduct, like Collinsworth's, did imply a threat of immediate force, and the evidence supporting that finding is even stronger than in Collinsworth. In three of the four robberies, Shcherenkov showed each bank teller a note explicitly stating that he was robbing them. The tellers reasonably interpreted this language to be threatening because robbery inherently involves a threat of immediate force. See RCW 9A.56.190; Webster's, supra, at 1964 (to "rob" is "to take something away from (a person) by force"). In the fourth robbery, Shcherenkov's note said in heavy capital letters, "Place $4,000 in an envelope. Do not make any sudden movements or actions. I will be watching you." RP at 669. A rational trier of fact could reasonably interpret Shcherenkov's statement, "I will be watching you," to be an indirect communication that he would use force if the teller did not comply with his demands. Furthermore, Shcherenkov kept his hand in his pocket for the entire exchange, and the jury could have reasonably found that he was deliberately insinuating that he had a weapon. Under these circumstances, the jury's conclusion that Shcherenkov threatened use of immediate force was supported by sufficient evidence.

III. Ineffective Assistance of Counsel
¶ 24 Shcherenkov argues that his counsel ineffectively represented him when he failed to request that the jury be instructed on first degree theft as a lesser included offense.
¶ 25 To demonstrate that counsel ineffectively represented him, Shcherenkov must show that (1) his attorney's performance was so deficient that it "fell below an objective standard of reasonableness" and (2) the deficient performance prejudiced Shcherenkov. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brockob, 159 Wash.2d 311, 344-45, 150 P.3d 59 (2006). We allow trial counsel considerable deference and presume that counsel's representation was effective. State v. McNeal, 145 Wash.2d 352, 362, 37 P.3d 280 (2002).
¶ 26 Both a defendant and the State have a statutory right to have lesser included offenses presented to the jury if (1) all the elements of the lesser offense are necessary elements of the charged offense (the legal prong) and (2) the evidence supports an inference that only the lesser crime was committed (the factual prong). State v. Stevens, *104 158 Wash.2d 304, 310, 143 P.3d 817 (2006); see RCW 10.61.006.
¶ 27 Shcherenkov cannot meet the factual prong of this test. This prong requires that "the evidence ... permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater." State v. Fernandez-Medina, 141 Wash.2d 448, 456, 6 P.3d 1150 (2000) (quoting State v. Warden, 133 Wash.2d 559, 563, 947 P.2d 708 (1997)). In undertaking this inquiry, we review all the evidence presented in the light most favorable to the party requesting the instruction. Fernandez-Medina, 141 Wash.2d at 455-56, 6 P.3d 1150. But that evidence must affirmatively establish the defendant's theory of the case; it is not enough that the jury might disbelieve the evidence pointing to guilt. Fernandez-Medina, 141 Wash.2d at 456, 6 P.3d 1150. Here, the primary difference between the crimes of first degree theft and robbery is the use or threatened use of force,[4] and the evidence in this case does not permit a jury to rationally find that Shcherenkov obtained the banks' money without such a threat. Shcherenkov has never proposed any other means by which he induced the bank tellers to give him the money, nor could any such reason be rational.
¶ 28 Because Shcherenkov was not entitled to an instruction on first degree theft as a lesser included offense, defense counsel's decision not to request one was not deficient. Consequently, Shcherenkov's ineffective assistance claim fails.
¶ 29 Affirmed.
We concur: HUNT, J., and PENOYAR, A.C.J.
NOTES
[1] Although the State originally charged the four incidents under two different cause numbers, they were consolidated for trial.
[2] At the time these crimes occurred, this definition was codified at former RCW 9A.04.110(26) (2005).
[3] The dictionary definitions of "indirect" include "not straightforward and open" and "not proceeding to an intended end by the most direct course or method." Webster's third New Int'l Dictionary at 1151 (2002). Webster's definition of "imply" includes "to convey or communicate not by direct forthright statement but by allusion or reference likely to lead to natural inference." Websters, supra, at 1135.
[4] The relevant form of first degree theft is a wrongful taking of property from the person of another with the intent to deprive him of such property. RCW 9A.56.020(1)(a), .030(1)(b). And as noted above, a person commits robbery when he or she "unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person." RCW 9A.56.190.