# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73462-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRYAN RICHARD SASS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |
| | ) | |

VERELLEN, C.J. — A jury convicted Bryan Sass of attempted first degree robbery

of a financial institution. Sass appeals and argues that insufficient evidence supports

his conviction because the State failed to establish that he used or threatened force,

violence, or immediate injury. He also contends that the trial court erred in denying his

request for an instruction on the lesser included offense of attempted first degree theft.

Finally, he argues that the trial court erred in finding federal bank robbery comparable to

Washington's crime of robbery, resulting in over calculation of Sass's offender score for

purposes of sentencing. We conclude sufficient evidence supports Sass's commission

of attempted first degree robbery and he was not entitled to an instruction on attempted

first degree theft. However, the State concedes, and we agree, that his offender score

was improperly calculated and we thus remand for resentencing.

<u>FACTS</u>

On August 11, 2014, Sass entered a branch of J.P. Morgan Chase Bank in Everett. Even though it was a very warm day, Sass wore a dark hooded sweatshirt with the hood pulled over his head, a surgical mask on his face, and gloves. After waiting in line, he was called to the counter by Djamila Ayouni, a teller at the drive-through window. Ayouni assisted customers inside the bank when the drive-through line was empty. Sass told Ayouni that he needed hundreds, fifties, and twenties, and she asked for his debit card and identification. He answered, "[N]o ma'am, I came to rob you."[1] She said, "[E]xcuse me," and he repeated the same words.[2] Sass did not make any attempt to grab Ayouni, and he did not show her any weapons. Ayouni walked across to the drive-up window where her cash drawer was located and activated a silent alarm. Sass walked away from the counter.

Brent Flagg was the assistant branch manager at the bank. He saw Sass waiting in line, wearing a surgical mask. Flagg testified that he saw Sass walking away from Ayouni and thought he looked a little confused. He asked Sass if he could help him, and Sass replied that "she needed a debit."[3] Flagg said he was confused and did not understand, and Sass replied, "[S]o am I."[4] Flagg testified that Sass made him nervous. Sass then left the bank.

Sass was arrested about a block away. When questioned by police, Sass said he was wearing a mask and gloves because he had an infection in his nasal cavity, but

---

[1] Report of Proceedings (RP) (Mar. 23, 2015) at 24.

[2] Id.

[3] Id. at 52.

[4] Id.

2

he acknowledged he had not been wearing the mask earlier when he was in a park with friends. At trial, Dr. Eileen Bulger testified that Sass had undergone a hernia repair operation on May 16, and that he had been treated for an antibiotic resistant staph infection in his groin. Dr. Bulger also testified that the infection was not transmittable through the air and that an infected person would not be expected to wear a surgical mask.

The State charged Sass with attempted first degree robbery committed within and against a financial institution, in violation of RCW 9A.56.200(1)(b). At trial, Sass requested a jury instruction on the lesser included offense of attempted first degree theft, but the trial court denied his request. Based on the testimony of Ayouni, Flagg, and three police officers, and a videotape of Sass's activities at the bank, the jury convicted Sass as charged.

At sentencing, the State introduced records showing that Sass had eight prior felonies, two of which were federal bank robberies. Over Sass's objection, the trial court found the offenses comparable to the Washington crime of robbery, which yielded an offender score of 12, with a standard sentence of range of 96 to 128 months. The trial court sentenced Sass to 100 months' confinement.

Sass appeals.

## DISCUSSION

### Sufficiency of the Evidence

Sass claims that insufficient evidence supports his conviction because the State failed to establish that he used or threatened force, violence, or immediate injury. We review a defendant's challenge to the sufficiency of the evidence by asking whether any

rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[5] In answering this question, we view the evidence in the light most favorable to the State, drawing all reasonable inferences in favor of the State.[6] We consider circumstantial and direct evidence to be equally reliable, and defer to the jury on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[7] Evidence is sufficient if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt.[8]

"A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone."[9] Our legislature has broadly defined "threat" to include indirect threats to cause bodily injury or to cause substantial harm to another's health or safety.[10] Sass was charged with attempted first degree robbery. Pursuant to RCW 9A.56.200(1)(b), a person commits first degree robbery when "[h]e or she commits a robbery within and against a financial institution as defined in RCW 7.88.010 or 35.38.060."

---

[5] State v. Finch, 137 Wn.2d 792, 831, 975 P.2d 967 (1999).

[6] Id.

[7] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004.

[8] Id. at 874.

[9] RCW 9A.56.190.

[10] RCW 9A.04.110(28).

4

In State v. Farnsworth, a jury convicted the defendant of first degree robbery based on conduct that Sass admits is similar to his own, conduct that did not involve a weapon or any explicit threats.[11] Farnsworth's accomplice, wearing a wig as a disguise, approached the teller with a note stating "No die [sic] packs, no tracking devices, put the money in the bag."[12] Farnsworth claimed that there was insufficient evidence to convict him of first degree robbery because there was no threat of force. Our Supreme Court disagreed.

The Court recognized that the defendant's demand for money was not "an explicitly threatening message"[13] and that the defendant did not have, and never claimed to have, a weapon.[14] Nonetheless, the Court held that his message to the teller "was laden with inherent intimidation [because] [w]hen a person demands money at a bank, with no explanation or indication of lawful entitlement to money, it can imply a threat of force because without such a threat, the teller would have no incentive to comply."[15] Thus, "[a]n ordinary bank teller could reasonably infer an implied threat of harm under these circumstances."[16]

As in Farnsworth, despite the lack of an explicit direct threat or a weapon, the teller felt threatened.[17] Ayouni testified that as soon as Sass told her he was robbing her, she felt scared and started to panic. The facts support a finding "that a reasonable

---

[11] 185 Wn.2d 768, 374 P.3d 1152 (2016).

[12] Id. at 778.

[13] Id. at 771.

[14] Id. at 776.

[15] Id. at 771-72.

[16] Id. at 772.

[17] Id. at 771-72.

person in the teller's position could reasonably infer a threat of bodily harm," and that Ayouni did indeed feel threatened.[18] Moreover, although Sass emphasized that he calmly asked Ayouni for the money, "'[n]o matter how calmly expressed, an unequivocal demand for . . . the bank's money, unsupported by even the pretext of any lawful entitlement to the funds, is fraught with the implicit threat to use force.'"[19]

Sass acknowledges that the facts in his case are similar to those in Farnsworth. In a statement of additional authorities, Sass highlights the Supreme Court's observation in Farnsworth that "[c]ontext matters."[20] But that observation relates to Farnsworth's "unfounded" concern that "any unlawful demand for money at a bank would constitute robbery."[21] Sass twice expressly declared his intent to rob the bank. And the context of those two unequivocal statements is that Sass was wearing a surgical mask, gloves and a hoody pulled down over his head, and he needed hundreds, fifties, and twenties. His statements are laden with an implied threat of force. There is no context or inference of a confused or mistaken mere demand for money.

There was sufficient evidence to establish that Sass threatened the use of force in attempting first degree robbery because his "conduct conveyed an implied threat of force designed to compel a reasonable person in the teller's position to give [him] money."[22]

---

[18] Id. at 777 ("[D]emanding money from a teller communicate[s] an implied threat because it [is] 'objectively reasonable' for a bank teller to fear harm in [such] circumstances, even though no explicit threat was made." (quoting State v. Collinsworth, 90 Wn. App. 546, 551, 966 P.2d 905 (1997))).

[19] Id. (quoting Collinsworth, 90 Wn. App. at 553).

[20] Statement of Supplemental Auths. at 1-2.

[21] Farnsworth, 185 Wn.2d at 779.

[22] Id. at 779.

*Lesser Included Offense Instruction*

Sass maintains that he was entitled to an instruction on the lesser included offense of attempted first degree theft. We disagree.

In general, a defendant may only be tried and convicted "of crimes with which he or she is charged."[23] However, pursuant to Washington statute, a defendant may be convicted of a lesser included offense, a crime "the commission of which is necessarily included within that with which he is charged in the indictment or information"[24]

We apply the two-pronged Workman test in determining whether one crime is a lesser included offense of another.[25] "First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed."[26] The first prong is the "legal prong" and the second, the "factual prong."[27] The legal prong "incorporates the constitutional requirement of notice," while the factual prong incorporates the rule that "each side may have instructions embodying its theory of the case if there is evidence to support that theory."[28] Here, the trial court refused to give the attempted first degree theft instruction on both the legal and factual prong. We review the legal prong de novo and the factual prong for abuse of discretion.[29]

---

[23] State v. Berlin, 133 Wn.2d 541, 544, 947 P.2d 700 (1997).

[24] RCW 10.61.006

[25] Berlin, 133 Wn. 2d at 545-46 (citing State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).

[26] Id. at 545-46.

[27] Id. at 546.

[28] Id.

[29] State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

As to the legal prong, the State charged Sass with attempted first degree robbery. Both the information and the to convict instruction include the statutory definition of "robbery," including the taking of "personal property *from the person of another or in his or her presence* . . . by the use or threatened use of immediate force, violence, or fear of injury."[30] "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services."[31] First degree theft requires either the taking of property or services exceeding $5,000 in value or "[p]roperty of any value, . . . taken *from the person of another.*"[32]

The State makes a compelling argument that the statutory definition of robbery, from the person or in the presence of the victim, does not establish alternative means of committing robbery,[33] that the legal prong for a lesser included offense was not satisfied because, as charged and prosecuted, the jury could have convicted Sass of attempted first degree robbery based on taking property in the *presence* of the victim without meeting all of the elements of attempted first degree theft for the wrongful taking of property "*from the person.*"[34] But we need not rely upon the legal prong.

---

[30] RCW 9A.56.190 (emphasis added).

[31] RCW 9A.56.020(1)(a).

[32] RCW 9A.56.030(1)(a), (b) (emphasis added).

[33] State v. Owens, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014); see also State v Klimes, 117 Wn. App. 758, 769 n.3, 73 P.3d 416 (2003) (questioning whether taking property "from the person" or "in his presence" constitute alternative means).

[34] RCW 9A.56.030(1)(b) (emphasis added). Cases cited by Sass for the proposition that theft has been recognized as a lesser included offense of robbery either make broad statements in passing with no analysis, or fail to address the analysis offered by the State. See Farnsworth, 185 Wn.2d at 775-76 (containing a general statement about force or the threat of force being the difference between robbery and theft without analyzing or applying the Workman test); State v. Witherspoon, 180 Wn.2d

Without regard to the legal prong, the evidence at trial failed to satisfy the factual prong. Under the factual prong, there must be evidence introduced at trial to support a conviction of the lesser included offense.[35] On review, the court will view "the supporting evidence in the light most favorable to the party requesting the instruction.[36] But "the evidence must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt."[37] Only if there is enough evidence that a jury could rationally convict the defendant of the lesser offense "and acquit him of the greater, a lesser included offense instruction should be given."[38]

Here, even viewed in a light most favorable to Sass, there is insufficient evidence to support a jury finding that Sass attempted to take money without an implied threat of force. Sass wore a mask, gloves, and hoody pulled over his head, requested money from Ayouni without any legal authority to do so, and calmly told Ayouni twice that "I

---

875, 885-87, 329 P.3d 888 (2014) (analyzing the defendant's ineffective assistance claim on the assumption that theft is lesser included offense to second degree robbery, but without Workman analysis); State v. McKague, 172 Wn.2d 802, 804, 262 P.3d 1225 (2011) (failing to address whether third degree theft was properly included as a lesser included offense to first degree robbery because, although the defendant was charged with these crimes, he was convicted of third degree theft and second degree assault); State v. Shcherenkov, 146 Wn. App. 619, 630, 191 P.3d 99 (2008) (analyzing ineffective assistance claim and finding that defendant could not meet the factual prong of the Workman test without addressing whether the legal prong of that test was satisfied); State v. O'Connell, 137 Wn. App. 81, 95-96, 152 P.3d 349 (2007) (same); State v. Herrera, 95 Wn. App. 328, 332, 977 P.2d 12 (1999) (applying Workman and concluding that third degree assault is not a lesser included offense of robbery without discussing the defendant's "concession" that third degree theft is a lesser included offense of first degree robbery).

[35] Berlin, 133 Wn.2d at 546, 551.

[36] State v. Fernandez Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

[37] Id. at 456.

[38] Berlin, 133 Wn.2d at 551.

came to rob you."[39] Such conduct establishes the use of an implied threat of force.[40] Evidence that he appeared confused and made a self-serving statement that he was confused is not affirmative evidence of a mistaken or confused mere demand for money without an implied threat of force.[41] Stated another way, in this context, Sass's two unequivocal statements of "I came to rob you" do not allow any rational juror to find he intended to take money without an implied threat of force.[42] The trial court did not abuse its discretion in denying Sass's request for an instruction on attempted first degree theft.

*Offender Score*

Finally, Sass contends that the trial court erred in finding his two prior convictions for federal bank robbery were comparable to Washington's crime of robbery and thus erred in calculating his offender score. The State concedes the error, and we agree.

We apply a two-part test when determining whether a foreign conviction is comparable to a similar Washington offense.[43] First, the elements of the foreign conviction and the Washington offense are analyzed to determine whether the offenses

---

[39] RP (Mar. 23, 2015) at 24.

[40] Farnsworth, 185 Wn.2d at 771-72.

[41] Id. at 776-77.

[42] Shcherenkov,146 Wn. App. at 630 (affirming the defendant's convictions for first degree robbery of a financial institution and holding that the defendant could not meet the factual prong of the Workman test and therefore counsel was not ineffective in failing to request an instruction on the lesser included offense of first degree theft because the evidence did "'not permit a jury to rationally find'" that the defendant obtained the money without a threat to use force, and he "has never proposed any other means by which he induced the bank tellers to give him the money, nor could any such reason be rational" (quoting Fernandez-Medina, 141 Wn.2d at 456)).

[43] State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

are legally comparable.[44] If the foreign conviction is broader than the Washington offense, the statutes are not legally comparable and the court moves on to determine factual comparability.[45] To determine factual comparability, we consider "whether the defendant's conduct would have violated the comparable Washington statute."[46]

Federal bank robbery[47] is not legally comparable to robbery in Washington because Washington law requires proof of a specific intent to steal.[48] "Thus, a person could be convicted of federal bank robbery without having been guilty of second degree robbery in Washington."[49] Review of Sass's plea agreement fails to establish an intent to steal because he neither admitted nor stipulated that he acted with an intent to steal.[50] Because we agree that the State failed to establish that the federal bank robberies were factually equivalent to Washington robbery based on the failure to establish an intent to steal, we need not address Sass's argument that the federal law is broader than Washington law on the element of intimidation or threat. Moreover, whether the federal robberies should be calculated as class C felonies,[51] as the State

---

[44] Id.

[45] Id. at 472-73.

[46] Id. at 473.

[47] 18 USC § 2113(a).

[48] In re Pers. Restraint of Lavery, 154 Wn.2d 249, 255, 111 P.3d 837 (2005); State v. Kjorsvik, 117 Wn.2d 93, 98, 812 P.2d 86 (1991) ("Although our robbery statute, RCW 9A.56.190, does not include an intent element, our settled case law is clear that 'intent to steal' is an essential element of the crime of robbery.").

[49] Lavery, 154 Wn.2d at 256.

[50] See Clerk's Papers at 217-25; Lavery, 154 Wn.2d at 258 (when examining "the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction [are] problematic").

[51] RCW 9.94A.525(3).

maintains, and thus count one point towards Sass's offender score, and whether the federal offenses "wash out" as Sass maintains,[52] we leave for the trial court to determine on remand.

## Costs

In his brief, Sass asked this court to deny the State its costs.[53] We note that an order of indigency and a supplemental order of indigency were filed in the trial court, and the record does not reflect a finding by the trial court that Sass's financial condition has improved. In light of Sass's indigency, we exercise our discretion "to rule that an award to the State of appellate costs is not appropriate."[54]

We affirm Sass's conviction, but remand for resentencing to recalculate Sass's offender score. Appellate costs will not be awarded.

WE CONCUR:

---

[52] RCW 9.94A.525(2)(c).

[53] See RAP 14.2 (costs awarded to party that "substantially prevails on review" unless appellate court directs otherwise in decision terminating review); RCW 10.73.160 (court may order offender to pay appellate costs).

[54] State v. Sinclair, 192 Wn. App. 380, 394, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).