# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                      Respondent,<br><br>              v.<br><br>JOSHUA CASTILLO,<br><br>                    Appellant. | No. 78863-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Castillo appeals his conviction for first degree robbery of a financial institution. He argues that the State failed to prove beyond a reasonable doubt that he took money through the use or threatened use of immediate force. We affirm.

## FACTS

On November 22, 2017, Kelly Schwetz was working her shift as a bank teller at a Skagit Bank in Mount Vernon. Just before 1:00 p.m., she saw a man that she believed to be a customer enter the bank. There were no cars at the drive-through station she was working at, so she called the man over to a lobby window to help him. As he walked over to the window, Schwetz noticed that he was wearing a black trench coat and a black cowboy hat that prevented her from seeing his face very well. The man then lifted up his hands, at which point she noticed that he was wearing black latex gloves. Schwetz found this unusual and became concerned.

Citations and pin cites are based on the Westlaw online version of the cited material.

Her concern grew as the man opened his coat and reached inside. She thought that he might have a gun.

After reaching into his coat, the man showed Schwetz a note. The note stated, "'This is a robbery. Stay calm, don't draw attention to yourself, and give me $800.'" Schwetz felt terrified and started to turn around to go back to her drive-through station to get the money. She then realized that her turning around and walking away might upset the man. As a result, she turned back to explain to him that she had to go get the money from the drive-through station. The man appeared angry.

Once Schwetz returned to the window with the money, she tried counting the money out. In the event of a bank robbery, she had been trained to keep the transaction as normal as possible. However, the man grabbed the money from her before she could finish counting it. After he took the money, Schewtz immediately went to her boss and coworkers to report the robbery and call 911. A customer at the bank saw the man run out the door.

Police responded to Schwetz's call and set up a containment zone in an area around the bank in order to keep the suspect in that area. They used a K-9 track to determine the suspect's location. During the K-9 track, police located a jacket with a food bank card inside. The food bank card belonged to an individual named Joshua Castillo. The K-9 track eventually led police towards Edgewater Park. Police had made contact with Castillo on prior occasions in the Edgewater Park area. Based on the bank surveillance video and photographs, as well as the K-9 track leading to the jacket and food bank card, police believed that Castillo

was their suspect. At around 2:00 a.m. the next morning, Castillo was rescued from rising flood waters at Edgewater Park. He was then transported to Skagit Valley Hospital, where police later arrested him.

The State charged Castillo with first degree robbery of a financial institution.[1] A jury found him guilty. The trial court sentenced him to 12.5 years of confinement. Castillo appeals.

## DISCUSSION

Castillo argues that the State failed to prove beyond a reasonable doubt that he took money through the use or threatened use of immediate force.

The sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

---

[1] The State also charged Castillo with third degree assault of a law enforcement officer. The trial court later dismissed that charge.

A person is guilty of first degree robbery if "[h]e or she commits a robbery within and against a financial institution." RCW 9A.56.200(1)(b). The trial court instructed the jury that, to convict Castillo of first degree robbery, the State had to prove seven elements beyond a reasonable doubt. Among those elements, the State had to prove that "[t]he taking was against the person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person or to the person or property of another." The court further instructed the jury that "[a] threat to use immediate force or violence may be either express or implied."

"Robbery encompasses any 'taking of . . . property [that is] attended with such <u>circumstances of terror</u>, or such threatening by <u>menace, word or gesture</u> as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person.'" <u>State v. Shcherenkov</u>, 146 Wn. App. 619, 624-25, 191 P.3d 99 (2008) (alterations and emphasis in original) (quoting <u>State v. Redmond</u>, 122 Wash. 392, 393, 210 P. 772 (1922)). We use an objective test to determine whether the defendant used intimidation. <u>State v. Witherspoon</u>, 180 Wn.2d 875, 884, 329 P.3d 888 (2014). Specifically, "[w]e consider whether an ordinary person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts." <u>Id.</u> "The controlling question is whether a jury could conclude that under the circumstances, a reasonable person would have felt sufficiently threatened to accede to the written demand to turn over the money." <u>State v. Clark</u>, 190 Wn. App. 736, 756, 361 P.3d 168 (2015).

Castillo argues that his actions did not constitute an implicit threat to inflict bodily harm because "[h]e merely entered the bank and showed Schwetz a note." He asserts that he "made no threatening gestures," he "uttered no threatening words," and Schwetz "gave him the money because that is how she was trained to respond." Thus, he states that Schwetz's "automatic response" to his request was not sufficient to establish that he actually threatened to harm her. He differentiates this case from Clark. There, Reynolds[2] entered a bank wearing black clothing, black gloves, and a black mask, and commanded two bank tellers not to push any alarm buttons. Clark, 190 Wn. App. at 759. He gave one of the tellers a note stating, "'No dye packs or transmitter.'" Id. He commanded the same teller "to not put any dye packs in with the money," and, after she gave him small bills, demanded more money. Id. at 760. This court held that this evidence was sufficient to support a finding that Reynolds obtained the money through force, violence, or fear of injury. Id. at 759-60. In contrast, Castillo states that he "uttered no words and made no gestures to suggest he had a weapon."

The State counters that the facts here are nearly identical to those in State v. Collinsworth, 90 Wn. App. 546, 966 P.2d 905 (1997), and Shcherenkov. In Collinsworth, the defendant entered banks on six separate occasions and verbally demanded money. 90 Wn. App. at 548-50. This court determined that, under the circumstances of the case, the fact that he did not display a weapon or overtly

___

[2] The State charged both Reynolds and Clark with first degree robbery. Id. at 747. Reynolds pleaded guilty to two counts of first degree robbery and one count of attempted first degree robbery. Id. at 747-48. The State then charged Clark by amended information as an accomplice to one of the attempted first degree robberies. Id. at 748.

5

threaten the bank tellers did not preclude a robbery conviction. Id. at 553. In each incident, the defendant "made a clear, concise, and unequivocal demand for money." Id. He also "either reiterated his demand or told the teller not to include 'bait' money or 'dye packs,' thereby underscoring the seriousness of his intent." Id. This court held that, "[n]o matter how calmly expressed, an unequivocal demand for the immediate surrender of the bank's money, unsupported by even the pretext of any lawful entitlement to funds, is fraught with the implicit threat to use force." Id.

In Shcherenkov, the defendant entered banks on multiple occasions and made written demands for money. 146 Wn. App. at 622-23. On three of those occasions, he handed a note to the bank teller that stated, "'This is a robbery.'" Id. This court held that sufficient evidence supported that the defendant's conduct implied a threat of immediate force. Id. at 628-29. It also noted that the evidence was even stronger than the evidence in Collinsworth. Id. at 628. It explained, "In three of the four robberies, Shcherenkov showed each bank teller a note explicitly stating that he was robbing them. The tellers reasonably interpreted this language to be threatening because robbery inherently involves a threat of immediate force." Id. at 628-29.

Like Collinsworth, Castillo made an unequivocal demand for the immediate surrender of the bank's money when he showed Schwetz a noted that stated, "'This is a robbery. Stay calm, don't draw attention to yourself, and give me $800.'" None of the evidence suggests that this demand was supported by even the pretext of a lawful entitlement to the funds. Schwetz felt terrified when Castillo

6

showed her the note. Like the bank tellers in <u>Shcherenkov</u>, it was reasonable for Schwetz to interpret the language in the note as threatening because robbery inherently involves a threat of immediate force. Viewing the evidence in the light most favorable to the State, a rational trier of fact could find that Castillo made an implied threat to use immediate force or violence when he demanded money from the bank. Accordingly, the evidence is sufficient to support his conviction.

We affirm.

*Appelwick, J.*

WE CONCUR:

*Chun, J.*          *Andrus, A.C.J.*