# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>NATHAN TOBIAS SHULL,<br><br>Appellant. | No. 59416-1-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—Nathan Tobias Shull stole money from a bank. The State charged him with robbery of a financial institution. During trial, the State informed the trial court that an officer involved in Shull's arrest would be unavailable to testify. Shull moved to continue so the officer could testify for the defense, which the trial court denied. The jury convicted Shull.

Shull appeals. He argues that the trial court abused its discretion and violated his constitutional right to compulsory process when it denied his motion for a continuance to secure the witness. In a statement of additional grounds (SAG), Shull also argues there was insufficient evidence to support the "original charging documents." We disagree and affirm.

## FACTS

### I. BACKGROUND

#### A. Bank Robbery

In August 2023, Shull entered a bank and walked up to Thomas Ichiyama's teller window. Shull put a note and pouch on Ichiyama's counter and leaned over the teller desk where Ichiyama was, "more so than a normal person would." 2 Verbatim Rep. of Proc. (VRP) (Feb. 26, 2024) at

269. The note read, "'Refer to employee handbook. Follow protocol. Cash, please. No dye or GPS device. Hurry. Be Calm. God is good.'" 2 VRP (Feb. 26, 2024) at 252.

After Ichiyama picked up the note, Shull told Ichiyama to keep his hands where Shull could see them and to give Shull everything Ichiyama had. Ichiyama complied with the note and Shull's instructions, gathering all the large bills while keeping his hands visible at all times. But, despite the note's instructions, Ichiyama mixed in a GPS tracker with the bills. Ichiyama began to put the money into the pouch when Shull took the money from Ichiyama's hands and left. Shull did not show Ichiyama a weapon or say he had one, nor did Shull make any "verbal warnings." 2 VRP (Feb. 26, 2024) at 302. After Shull left the bank, Ichiyama activated a silent alarm.

B.      Police Response

Officer Scott Hendershot went to the bank after receiving a call indicating a possible robbery at the location. Ichiyama provided a written statement regarding the robbery. Ichiyama's statement did not mention that he felt intimidated, scared, or threatened.

Other officers found and detained Shull. Shull had a wad of cash in his pocket. Officer Brian She then transported Ichiyama to Shull's location to see if Ichiyama could identify Shull as the robber. Ichiyama positively identified Shull as the individual who took the money. Christopher Cole, the bank's security guard, was also transported to Shull's location, but was unable to positively identify Shull as the same person in the bank.

Nearby, another officer found a second note, identical in phrasing as the note handed to Ichiyama, but with additional underlining of some words.

C.     <u>Pretrial</u>

The State charged Shull with one count of first degree robbery. Prior to trial, the trial court granted Shull's motion to represent himself and appointed standby counsel. The trial court also granted the State's motion to continue trial for one week to accommodate witness availability, despite Shull's objections to a continuance.

## II. TRIAL

Shull's case proceeded to trial. Before opening statements, Shull asked the trial court if all the witnesses on the State's list would appear at trial. Shull never filed a witness list, but the trial court allowed Shull to cross-endorse the witnesses on the State's witness list. The State did not indicate at that time that any of its witnesses were unavailable to testify at trial.

A.     <u>Evidence at Trial</u>

1.     <u>Testimony about threats and intimidation</u>

On the first day of trial testimony, Hendershot testified that he was the officer who responded to the bank and spoke with Ichiyama. Hendershot did not testify about Ichiyama's demeanor after the robbery.

The State played surveillance footage from the robbery during Ichiyama's testimony. The State asked Ichiyama what happened as Shull passed Ichiyama the note, and Ichiyama responded, "[Shull] was right at the desk, kind of leaning over it, more so than would normally be for clients." 2 VRP (Feb. 26, 2024) at 269. Ichiyama then described how he kept his hands visible while he gathered the cash. When asked if he complied with Shull's instructions because the robbery was a safety threat, Ichiyama responded, "Yes." 2 VRP (Feb. 26, 2024) at 270. Ichiyama further elaborated, "I felt like I was intimidated by him, kind of getting up, more so than a normal person

would, into the teller window." 2 VRP (Feb. 26, 2024) at 271. Ichiyama also testified that when he went to place the money in the pouch Shull placed on the counter, he "was interrupted by Nathan Shull taking it out of my hands and walking off with it." 2 VRP (Feb. 26, 2024) at 299.

On cross-examination, Ichiyama reiterated that he felt threatened and intimidated when Shull instructed him to keep his hands visible. Ichiyama explained that he did not include this information in his written witness statement because he ran out of space. Ichiyama did not testify that he told anyone on the day of the robbery that he felt threatened or intimidated.

Cole testified that after the robbery, he was also taken to Shull's location to confirm if Shull was the person who robbed the bank. On cross-examination, Shull did not ask Cole about Ichiyama's demeanor that day.

### 2. Unavailable witness

The next trial day, the State informed the trial court that Officer Brian She, the officer who transported Ichiyama and Cole from the bank to Shull's location, would be unavailable to testify. Officer She was "on days off" and was not responding to email or voice mail. 3 VRP (Feb. 27, 2024) at 388.

Shull asked to continue the trial so that Officer She could testify. Shull argued that the testimony presented so far had shown Ichiyama never mentioned being intimidated, scared, or threatened until Ichiyama testified, and Officer She could confirm that when Officer She transported Ichiyama to Shull's location, nothing suggested that Ichiyama was intimidated or afraid. The State opposed a continuance as it did not need Officer She for its case. The trial court postponed ruling on Shull's motion until the close of the State's case.

After the State rested, Shull restated that he wished to call She. When asked to provide an offer of proof, Shull said he wanted to "confirm again that there was no mention of being intimidated nor threatened by [Ichiyama]." 3 VRP (Feb. 27, 2024) at 441. The trial court stated that Shull had already successfully made this point in front of the jury when Shull cross-examined Ichiyama. The trial court denied Shull's motion.

3.    Shull's testimony

Throughout Shull's testimony, he was adamant that he did not threaten Ichiyama or use force to take the money. On cross-examination, the State asked Shull if he committed the bank robbery. Shull responded, "I committed a theft." 3 VRP (Feb. 27, 2024) at 451. When the State asked Shull to describe the differences between the note given to Ichiyama at the bank and the other note found later by the police, Shull testified that the "one with the lines underneath" perhaps had a "level of aggression" so he chose to present the note without underlines to Ichiyama. 3 VRP (Feb. 27, 2024) at 456.

B.    Jury Instructions and Closing

After both parties rested their case, Shull asked for a jury instruction stating, "'In order for a charge of robbery in the first degree to hold merit, victim must assert there was an immediate threat and/or fear of bodily harm.'" 3 VRP (Feb. 27, 2024) at 473. The trial court informed Shull it would not use that language as it was a misstatement of the law.

The court instructed the jury:

> To convict the defendant of the crime of robbery in the first degree, each of the following six elements of the crime must be proved beyond a reasonable doubt:
> (1) . . . defendant unlawfully took personal property from the person or in the presence of another;
> (2) That the defendant intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person or to that person's property;

(4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

(5) That the defendant committed the robbery within and against a financial institution.

Clerk's Papers (CP) at 103. The trial court also instructed the jury that "a threat to use immediate force or violence may be either express or implied." CP at 102.

During closing arguments, the State emphasized that under the totality of the circumstances, including what the jury could see on the video exhibits, Shull's direction to Ichiyama to keep his hands where Shull could see them had an implication of force. Shull's closing arguments focused on how he never intended to instill fear or threaten anyone. Shull acknowledged he committed theft but argued neither Ichiyama nor any of the officers involved testified that Ichiyama or anyone else reported feeling intimidation or fear on the day of the robbery, and no one ever mentioned intimidation or fear until the prosecution suggested intimidation.

C.    Verdict and Sentencing

The jury found Shull guilty of first degree robbery.

Before sentencing, Shull moved for a new trial, arguing he was unable to call a witness and there was insufficient evidence to convict. The trial court stated that Shull did a "good job" cross-examining Ichiyama and was able to inform the jury that when Ichiyama testified, it was the first time Ichiyama mentioned being intimidated. 5 VRP (Mar. 29, 2024) at 534. The trial court also stated there was sufficient evidence to submit the case to the jury and denied Shull's motion.

The trial court sentenced Shull to 41 months of confinement followed by 18 months community custody.

Shull appeals.

ANALYSIS

I. MOTION TO CONTINUE TRIAL

Shull argues the trial court abused its discretion by denying his motion for continuance and violated his constitutional right to compulsory process. We disagree.

A.    Merits of the Denial

Shull argues that the trial court abused its discretion when it denied his motion to continue to secure Officer She's testimony. Shull contends that Officer She's testimony was highly relevant to whether Shull impliedly threatened use of force, violence, or fear of injury, an element of first degree robbery. Shull states he would have asked Officer She about the written witness reports, Ichiyama's demeanor during transport, and whether Officer She had coerced Ichiyama into identifying Shull as the robber. Shull argues that he made a sufficient showing of surprise about Officer She's absence, demonstrated how Officer She's testimony would have been material, and had a due process right to call Officer She.

The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. *State v. Miles,* 77 Wn.2d 593, 597, 464 P.2d 723 (1970). We will not disturb the trial court's decision unless the appellant or petitioner makes "'a clear showing . . . [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (alterations in original) (quoting *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Trial courts may consider elements such as "surprise, diligence, materiality, redundancy, due process, and the maintenance of orderly procedures" when ruling on a motion for continuance. *State v.*

*Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974). A party challenging the denial of a continuance must also show "that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied." *Id.*

In *Eller*, the Washington Supreme Court held that the defense's motion for continuance was properly denied because the material witness's testimony would have been merely cumulative to the facts available from other witnesses or already conceded by other witnesses at trial. 84 Wn.2d at 97-98. The court held that because the testimony was cumulative and would have had no significant impact on the result, the denial of the continuance did not prejudice the defense. *Id.* at 98.

As provided in the jury instruction recited above, in order to prove first degree robbery, the State must prove that the defendant committed "a robbery within and against a financial institution." RCW 9A.56.200(1)(b). A person commits a robbery when they unlawfully take personal property from another person "by the use or threatened use of immediate force, violence, or fear of injury." RCW 9A.56.190. The threat of force, violence, or injury may be express or implied. *State v. Shcherenkov*, 146 Wn. App. 619, 626, 191 P.3d 99 (2008).

Here, like in *Eller*, the trial court did not abuse its discretion when it denied Shull's motion to continue. Shull contends that Officer She's testimony would have supported his argument that he did not threaten force, violence, or injury, and so he merely committed theft. But Shull could rely on other testimony or available witnesses to support this argument.

On multiple occasions, Shull had the opportunity to elicit testimony that Ichiyama had never mentioned feeling intimidated, threatened, or scared prior to trial. For example, Shull questioned Ichiyama directly and Ichiyama admitted to omitting feeling intimidated or scared

during the robbery on his written statement. Shull used this testimony in closing, when Shull reiterated that Ichiyama, at no point prior to trial, ever mentioned feeling intimidated, scared, or frightened.

Shull also could have sought to recall Officer Hendershot or the security guard Cole, who also went to Shull's location after Shull was detained. Shull could have sought to ask Hendershot or Cole questions about Ichiyama's demeanor and body language after the robbery, but Shull failed to do so. Therefore, Officer She's testimony as to these issues would have been merely cumulative or available from other witnesses. Moreover, the offer of proof about how Officer She would testify was speculative because Shull failed to present any evidence as to how Officer She would testify about Ichiyama's demeanor after the robbery. There was some risk that Officer She's testimony could have been more harmful than helpful to Shull, for example, if Ichiyama acted shaken up or otherwise intimidated during his ride with Officer She after the robbery.

As to Shull's argument regarding needing Officer She to testify about the space available on written witness reports, Shull could have recalled Hendershot to clarify whether there was only limited space to write on the report.

Finally, Officer She's potential testimony about whether Ichiyama reported or appeared to feel threatened would not have changed the outcome. Ichiyama testified that he felt threatened and intimidated when Shull handed him the note and leaned close to Ichiyama's teller desk. And this court has held that a threatened use of force can be implicit or involve indirect communication. *Shcherenkov*, 146 Wn. App. at 627. The Washington Supreme Court has also held that a demand note can be sufficient evidence of an implicit threat of force. *State v. Farnsworth*, 185 Wn.2d 768, 778, 374 P.3d 1152 (2016).

The combination of the demand note, Ichiyama's testimony about Shull's demands, and the surveillance footage strongly supported an implicit threat, regardless of whether Ichiyama told anyone he felt threatened or afraid on the day of the robbery. Thus, even if Officer She had testified that Ichiyama did not report or act like he felt intimidated or threatened after the robbery, that would not have kept the jury from relying on other overwhelming evidence to conclude Shull was guilty. Nor was Officer She's testimony likely to undermine the other evidence of an implied threat.

Lastly, regarding Shull's argument that Officer She may have coerced Ichiyama to identify Shull as the robber, there is no evidence on the record that Officer She coerced Ichiyama into making any statement. In fact, Ichiyama made his written statement about the robbery prior to being transported by Officer She. Thus, this argument that Officer She may have coerced Ichiyama also fails.

For all of these reasons, the trial court did not abuse its discretion when it denied Shull's motion for continuance.

B.      <u>Right to Compulsory Process</u>

Shull also argues that by denying his motion for a continuance to secure Officer She as a witness, the trial court violated his right to compulsory process because Officer She was a material witness to his defense. Shull states he demonstrated diligence as he was entitled to rely on the State's witness list and materiality because of the need to establish Ichiyama's demeanor just after the robbery.

The State responds that Shull failed to establish materiality because Ichiyama himself testified he never mentioned feeling threatened or intimidated to law enforcement, and Shull could

have asked other witnesses—such as Hendershot or Cole—the same questions he intended to ask Officer She about Ichiyama's demeanor on the day of the robbery. We agree with the State.

Whether the denial of a continuance rises to the level of a constitutional violation requires a case by case inquiry. *Eller*, 84 Wn.2d at 96. Similar to the analysis above, compulsory process arguments in criminal cases involve weighing diligence, materiality, and redundancy. *Id.* at 95. Denial of a request for a continuance may violate a defendant's right to compulsory process if the denial prevents the defendant from presenting a material witness. *Id.* However, denial does not rise to a constitutional error when the testimony would have been cumulative. *Id.* at 96, 98. The defendant carries the burden of establishing materiality. *State v. Smith*, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984) (citing *Ashley v. Wainwright*, 639 F.2d 258 (5th Cir. 1981)). This burden has been described as "establishing a colorable need." *Id.* at 42.

In *Downing*, the Washington Supreme Court held that although defense counsel made a sufficient showing they were surprised by new evidence and acted with diligence to secure an expert witness to respond, the expert witness's testimony would have been cumulative and, thus, the trial court did not violate the defendant's constitutional rights when it denied the motion for continuance. *Downing*, 151 Wn.2d at 275-76.

Here, Officer She's anticipated testimony was duplicative of Ichiyama's testimony and not material or necessary for Shull's defense. As discussed above, Shull had already demonstrated that Ichiyama never mentioned being intimidated or threatened until trial. And although Officer She became unavailable after Hendershot and Cole had already testified, Shull could have sought to recall either Hendershot or Cole to testify to Ichiyama's demeanor on the day of the robbery. Hendershot, as the responding officer, could have testified to Ichiyama's demeanor immediately

after the robbery. Cole, who also went to Shull's location to identify whether Shull was the robber, could have testified to Ichiyama's body language. Shull did not ask that these witnesses be recalled, nor has he established that the trial court would have refused to allow them to be recalled. Like in *Eller*, the availability of other witnesses weighs against a violation of the right to compulsory process. *See Eller*, 84 Wn.2d at 97-98. Therefore, Shull has not shown a colorable need for Officer She to testify.

The trial court did not violate Shull's constitutional right to compulsory process when it denied his motion for continuance because Shull has failed to show there was a colorable need for Officer She to testify.

## II. SAG

In his SAG, Shull argues there was insufficient evidence to support the "original charging documents" under RCW 9A.56.200(1)(b), which states that a person is guilty of robbery in the first degree if they commit robbery within a financial institution. SAG at 1. Shull argues that "a threat was never issued, implied, or led to believe a weapon was present" and therefore there was insufficient evidence to charge him under RCW 9A.56.200. SAG at 1. We disagree.

When the defendant challenges a charging document for the first time on appeal, we liberally construe the document in favor of validity. *State v. Kjorsvik,* 117 Wn.2d 93, 105, 812 P.2d 86 (1991). All essential elements of an alleged crime must be included in the charging documents in order to afford the defendant notice of the nature of the allegations to allow the defense to properly prepare. *Id.* at 101-02.

Shull relies on *State v. Scherz*, a Division Three case where the defendant had been charged under former RCW 9A.56.200(1)(b) (1975), to argue that his charging document omitted an element that could not be proven in his case. 107 Wn. App. 427, 27 P.3d 252 (2001).

Shull's reliance on *Scherz* is misplaced. When *Scherz* was decided, former RCW 9A.56.200(1)(b) stated that "[a] person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he . . . [d]isplays what appears to be a firearm or other deadly weapon." *See also State v. Russell*, 104 Wn. App. 422, 445, 16 P.3d 664 (2001). Shull contends that there was no evidence that he displayed or even possessed a weapon during the robbery. But the statute has been amended[1] since *Scherz*, and RCW 9A.56.200(1)(b), the subsection relied on in the charging document and in effect at the time Shull committed the robbery, now states that "[a] person is guilty of robbery in the first degree if . . . [h]e or she commits a robbery within and against a financial institution." Therefore, display of a weapon is no longer an element of the subsection of the statute that the State relied on in the information.

Additionally, as previously discussed, robbery of a financial institution requires force or threat, but a threat can be implied given the totality of the circumstances. *Shcherenkov*, 146 Wn. App. at 626; *Farnsworth*, 185 Wn.2d at 778. The charging document accurately listed all the elements for RCW 9A.56.190 and 9A.56.200(1)(b). The declaration for determination of probable cause stated that "[Ichiyama] reported that [Shull] entered the bank, handed him a note, and told [Ichiyama] to keep his hands in the air." CP at 1-2. The declaration also quoted the language from Shull's note. When viewed as a whole, the facts stated in the declaration were sufficient to support

---

[1] LAWS OF 2002, ch. 85, § 1.

13

the first degree robbery charge, including the "threatened use of immediate force," listed on the charging document. CP at 3.

Although Shull appears to argue only about the sufficiency of evidence to support the original charging documents, to the extent that Shull is also attempting to challenge the sufficiency of the evidence to support his conviction, that argument also fails. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found [the defendant] guilt[y] beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). Therefore, the court must draw "all reasonable inferences . . . in favor of the State and against the defendant." *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024).

There was overwhelming evidence for a rational trier of fact to find an implied threat of force. Ichiyama testified, on multiple occasions, how he felt intimidated and threatened by Shull that day. The jury saw and read the note Shull used during the robbery. The jury also saw the surveillance video of the robbery, so the jury members could see the incident for themselves. Taken together and viewed in the light most favorable to the State, the evidence regarding a threat was sufficient to support Shull's conviction.

Thus, we conclude there was sufficient evidence contained in the charging document and declaration for determination of probable cause to support the charges. To the extent Shull challenges the sufficiency of evidence to support his conviction, we conclude there was sufficient evidence for the jury to infer a threat as necessary to support Shull's robbery conviction.

No. 59416-1-II

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

_____
GLASGOW, J.

We concur:

_____
LEE, P.J.

_____
CHE, J.

15